Filed 7/14/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ARMANDO L., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SANDY M.,<br><br>    Defendant and Appellant. | F072715<br><br>(Super. Ct. No. JP000930)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Merced County.  Frank Dougherty, Judge.

Rebekah S. Sass, under appointment by the Court of Appeal, for Defendant and Appellant.

James N. Fincher, County Counsel, and Kimberly R. Helms, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

At the conclusion of a review hearing pursuant to Welfare and Institutions Code section 364[1] on October 29, 2015, the juvenile court terminated its jurisdiction over 11-year-old Armando L., who had been a dependent of the juvenile court for two years. Armando's mother, Sandy M. (mother), contends the juvenile court improperly denied her an evidentiary hearing on the issues of Armando's custody and whether the court's jurisdiction should have been terminated. We agree. In doing so, we reject the arguments of Merced County Human Services Agency (agency) that the juvenile court's denial of an evidentiary hearing was proper because mother's objection was outside the scope of the hearing, the evidence mother wanted to introduce was irrelevant, and any error in the juvenile court's ruling was harmless. Accordingly, the orders of the juvenile court must be reversed.

## FACTS AND PROCEEDINGS

### *Initial Proceedings*

On October 30, 2013, a petition was filed pursuant to section 300 alleging Armando, then nine years old, had come to school with bruises on his face caused by his father hitting him. Father hit Armando because he was frustrated at not being able to repair a neighbor's vacuum cleaner and had slapped Armando in the face four times for no reason. Father admitted he "popped" his son in the mouth after Armando talked back to him. Armando had purple bruises on both sides of his cheeks, under his eyes, and both sides of his nose. There was redness on his left cheek with linear lines appearing to be fingerprints.

According to the petition, mother failed to contact the authorities to report the abuse or to take Armando immediately to the doctor. Mother did take photographs of Armando's injuries. Armando reported he was disciplined by father and father's

---

[1]Unless otherwise designated, all statutory references are to the Welfare and Institutions Code.

girlfriend by being hit. Mother had legal and physical custody of Armando, but left him in father's care because Armando was diagnosed with ADHD and she had trouble controlling his behavioral problems. In addition, mother had been diagnosed with ADHD and depression and was raising three other children.

Armando was immediately detained after the incident was reported to school authorities on October 28, 2013, and the juvenile court sustained the detention on October 31, 2013. Armando reported to social workers another episode of being hit by his father and explained he did not like staying with his father. Mother told social workers she was concerned about Armando's behaviors and believed she would have an easier time controlling him with services. Mother reported she left Armando's father because there was domestic violence between them. Mother was unaware father was using drugs around their son. Mother denied any domestic violence in her current relationship.

Father reported to social workers Armando had been living with him for about a year. Father admitted he had been in prison off and on since he was 18 years old and denied having any domestic violence in his current relationship. Father admitted using methamphetamine once or twice a month and claimed he did not buy it but it was given to him at a friend's house. Father said he was prescribed Vicodin and ibuprofen. Drug and hair follicle tests from father right after Armando was detained tested positive for methamphetamine.

The agency recommended mother stabilize her mental health and address the domestic violence of her past. The agency recommended mother receive nurturing classes and have a mental health assessment. The agency recommended family reunification services for father, including parenting classes and programs to address his substance abuse. These would include a drug and alcohol assessment to determine the extent of father's addiction. The agency recommended family maintenance services for mother, with custody of Armando with mother, and family reunification services for

father.  At the joint jurisdiction/disposition hearing on November 21, 2013, the juvenile court adopted the recommendations of the agency ordering family maintenance services for mother, reunification services for father, and leaving Armando's custody with mother.

*Supplemental Petition*

The agency filed a supplemental petition pursuant to section 387 on April 4, 2014, seeking to remove Armando from mother's custody.  The petition alleged Armando had been diagnosed in February 2014 with a mood disorder and ADHD.  Armando was being aggressive, defiant, and sexually inappropriate at school, becoming a danger to himself and others.  Although mother and the social worker were working with Aspiranet wraparound services, Armando was not responding adequately to interventions and therapeutic work provided by the program.  Mother informed the social worker Armando was refusing to take his medication, he had gained a great deal of weight, and he was hoarding food in his bedroom.

The agency sought a change of placement from mother to the agency.  Armando was placed in a group home.  After continuances, the joint jurisdiction/disposition hearing on the supplemental petition was conducted on June 4, 2014.  The agency reported father had made progress in his case plan and had maintained sobriety.  Father completed training and had negative drug tests.  Mother was also making progress in her case plan services, but Armando was not responding well after receiving those services.

Mother made efforts to provide additional supervision of Armando by staying home fulltime, but Armando refused to follow his mother's redirection.  Armando's physician believed Armando's challenges were not the fault of either parent.  The recommendation to place Armando in a group home was due to the difficulty he presented to adults, including highly educated professionals with years of experience and expertise, in controlling his behavior.  The agency recommended Armando remain in his new placement with continuing services to his parents.  The juvenile court adopted the recommendations of the agency at the conclusion of the hearing on June 4, 2014,

4.

including continuation of Armando's placement in a group home and further services for both parents.

*18-Month Review Hearing*

The status review report prepared by the agency in April 2015 for the 18-month review hearing noted Armando was living with his parents on a trial basis. He was staying with mother during weekdays and with his father on weekends. Father was in compliance with and completed all components of his case plan. Father had also remained drug free. Mother had also completed all of the components of her case plan and understood the programs and training she received.

In June 2015, on a trip to Wal-Mart, mother asked Armando not to be rude and to help her put things in their vehicle. Armando became upset, yelled profanities, and called her a bad mother. He then locked himself in the vehicle and refused to open the door for mother. On the drive home, Armando tried to hit and choke mother as she drove. Mother slapped Armando because she was unable to calm him down. On July 18, 2015, Armando became too aggressive for mother to handle and she called law enforcement. Armando did calm down when law enforcement arrived and he was not detained.

On July 30, 2015, the agency received a referral alleging Armando watched a pornographic video with younger siblings and touched one of them on the breast. The agency found the allegations substantiated. On September 19, 2015, during a weekend visit to mother's home, she could not control or deescalate Armando's behavior and tried using physical punishment. Law enforcement refused to intervene, and a support counselor with the Aspiranet program picked up Armando and brought him to father. On October 21, 2015, the agency decided to place Armando solely in his father's care in order to ensure his own safety as well as that of mother's other children. According to the agency, Armando has done well in his father's care and is less combative.

The agency reported mother believed Armando needs more time with her because father was the original source of Armando's trauma. Father told the agency he wanted

5.

Armando in his home because that is where he is safe. Armando said he was "over" what had happened and appeared indifferent. Both parents told the agency they were not interested in having Armando adopted. The agency concluded father was the most appropriate placement for Armando and noted mother continued to struggle with appropriate or effective discipline techniques necessary to prevent Armando from jeopardizing his safety or that of others. The agency recommended termination of the juvenile court's jurisdiction.

The brief 18-month review hearing was conducted on October 29, 2015. The juvenile court noted the agency was recommending termination of the dependency, custody of Armando to his father, and joint legal custody with visitation to mother as agreed by the parties. Mother's counsel stated his client "vehemently" opposed the recommendation because it was not in Armando's best interests. Mother's counsel told the court he had informed mother she did not have standing to contest that matter at the section 364 hearing and she would have to challenge custody in family law court.

The juvenile court informed the parents they had the right to a hearing before a judge on the issue of whether the court should follow the recommendation as set forth in the social worker's report. Elaborating on his earlier statement, mother's counsel stated his client wanted a contested hearing: "It's my understanding that as soon as I ask for a contested hearing, there is going to be an objection that we have no standing to request a contested hearing, but I will on her behalf request a contested hearing on this matter."

County counsel for the agency argued "that the only individual with the authority to contest or oppose an agency's request to dismiss is the minor through minor's counsel." The minor's counsel then objected to mother's request for a contested hearing, arguing mother had no standing to do so. Mother responded she objected to the agency's recommendations "overall." Mother's counsel stated mother objected to the recommendation for placement of the child and to dismissal of the action. Mother's counsel stated mother was concerned Armando needed more services and placement with

father would be part of the exit order. Mother believed therefore that dismissal of the action was not in Armando's best interests.

County counsel argued that with regard to custody, and because the case was being dismissed, mother did not "have standing to contest the dismissal, then the appropriate forum to challenge the placement and the custody orders [was] in the family law court." The court noted county counsel's objection was based on mother's lack of standing to contest dismissal of the action and the court's award of custody. Minor's counsel concurred with county counsel's argument and the court's observation. The court ruled it was following the agency's recommendations and ordered the case dismissed. As to the exit order regarding Armando's custody, the court found the proper forum was family law court. The court ordered Armando's joint custody to both parents with physical custody to father.

## DISCUSSION

### *Introduction*

Mother contends she had standing to challenge the trial court's orders dismissing the dependency action, granting father physical custody of Armando, and granting additional services to Armando. Mother further contends she was denied her right to a contested hearing on these issues. According to the agency, mother's request for more services and custody were outside the scope of a section 364 hearing. The agency argues mother's objections were irrelevant to the issue of terminating the juvenile court's jurisdiction at a section 364 hearing. The agency further argues any error in the juvenile court's findings was harmless.

We conclude mother had a right to present evidence at the section 364 hearing to challenge dismissal of the dependency action and to present any evidence relevant to the court's exit orders. The juvenile court's denial of an evidentiary hearing on these issues deprived mother of her due process right to present evidence, and the error was not harmless.

7.

*Legal Principles*

When a juvenile court finds a child is a dependent, in appropriate circumstances the dependency can be established without removing the child from his or her parents' home. The juvenile court can order family maintenance services to ameliorate the conditions causing the child to be subject to the court's jurisdiction. After the child is declared a dependent, the juvenile court must review the status of the child every six months. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1154; *Bridget A.* v. *Superior Court* (2007) 148 Cal.App.4th 285, 302-303.) Section 364 provides the standard when the child under the supervision of the juvenile court is not removed from the physical custody of the parent or guardian. (*In re Aurora P.*, *supra*, at p. 1154.) Section 364 also applies in cases where a child has been removed from the physical custody of a parent but later returned.[2] (*Aurora P.*, at p. 1154, fn. 9; *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290.)

At the section 364 review hearing, the juvenile court is not concerned with reunification, but in determining whether the dependency should be terminated or supervision is necessary. (*In re Aurora P.*, *supra*, 241 Cal.App.4th at p. 1155; *In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20.) The juvenile court makes this determination

---

[2]In *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1493, disapproved on other grounds in *In re Chantal S.* (1996) 13 Cal.4th 196, 204, this court held section 364 only applies to cases in which the child has never been removed from the original custodial home. In *Sarah M.*, the allegation was that the minor was physically abused by her mother, remained in the mother's custody for a time after dependency was instituted, and was later transferred to the custody of her father and stepmother. (*In re Sarah M.*, *supra*, at pp. 1491-1492.)

*Sarah M.* is distinguishable from this case because mother initially kept custody of Armando, he was later temporarily removed from her custody to live in a group home to provide him with services to control his behavior, and then placed back with mother before the agency decided to make father Armando's physical custodian. There was never a hearing or court order changing Armando's physical custody from mother to father until the section 364 hearing. Both parents also retained joint legal custody of Armando throughout the proceedings and in the juvenile court's exit order. Under the facts of this case, we find *In re Aurora P.* persuasive on the issue that section 364 proceedings applied to this case and do not apply the holding of *Sarah M.* here. Furthermore, the agency does not challenge the applicability of section 364 to these proceedings, though it does rely on *Sarah M.* on another point discussed, *post*.

8.

based on the totality of the evidence before it, including reports of the social worker who is required to make a recommendation concerning the necessity of continued supervision. (*In re Aurora P.*, *supra*, at p. 1155.)

Section 364, subdivision (c) establishes a statutory presumption in favor of terminating jurisdiction and returning the child to the parents' care without further court supervision. (*In re Aurora P.*, *supra*, 241 Cal.App.4th at p. 1155; *In re Shannon M.*, *supra*, 221 Cal.App.4th at p. 290.) Under the statute, the juvenile court "shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300." (§ 364, subd. (c); see *Aurora P.*, *supra*, at p. 1155.)

Although the statute refers to the social worker and the department establishing the basis for continuing jurisdiction, the first sentence of subdivision (c) of section 364 expressly makes clear the parent, guardian, or child may offer evidence on this question. The juvenile court is not bound by the department's or agency's recommendation to terminate jurisdiction if there is a preponderance of evidence to justify the court retaining it and the parent, guardian, child, or social agency has met that burden. (*In re Aurora P.*, *supra*, 241 Cal.App.4th at pp. 1155-1156.)

Family maintenance services are designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation in order to prevent separation of children from their families. Services may be extended in six-month increments if it can be shown that the objective of the service plan can be achieved within the extended time periods. Unlike family reunification services, nothing in the Welfare and Institutions Code or the California Rules of Court limits the time period for court supervision and services for dependent minors who remain at home. Family maintenance services may be provided until the dependent minor reaches the age of majority. (*In re Aurora P.*, *supra*, 241 Cal.App.4th at p. 1154, fn. 8; *In re Joel T.* (1999) 70 Cal.App.4th 263, 267-268.)

9.

When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make exit orders regarding custody and visitation. These orders become part of any family court proceeding concerning the same child and will remain in effect until they are modified or terminated by the family court. The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the juvenile court and may not be delegated to nonjudicial officials or private parties, including the parents themselves. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1122-1123.) The rule of nondelegation applies to exit orders issued when the dependency jurisdiction is terminated. (*In re Chantal S.*, *supra*, 13 Cal.4th at pp. 213-214; *In re A.C.*, *supra*, at p. 799.)

Section 362.4 authorizes a juvenile court to issue a visitation order when it terminates its jurisdiction over a minor. This includes orders tailored for nonparents such as adoptive parents, de facto parents, and grandparents. (*In re J.T.* (2014) 228 Cal.App.4th 953, 959-960.) In making its order, the juvenile court is not governed by the Family Code. Due to the separate and distinct purposes of the juvenile and family courts, many Family Code provisions do not apply to dependency proceedings. (*In re J.T.*, at pp. 960-961.) Family Code provisions, for instance, place a limitation on family courts to require parents involved in custody or visitation disputes to participate in counseling for no more than one year. (*Id.* at p. 961.) It is inconsistent with the purposes of the dependency system's protection of children who have been abused, abandoned, or neglected to require the juvenile court to apply statutory procedures meant for use in family court. (*Id.* at p. 962.)

***Mother's Standing and the Relevancy of Issues She Raised***

Although the agency contends mother has misstated the issue before us as standing, this point is not supported by the record. Multiple times during the brief section 364 hearing, counsel for both the agency and Armando argued mother had no standing to raise the issues of the court's jurisdiction, Armando's custody, and continued services for

10.

Armando. The agency cannot complain for the first time on appeal that mother's standing is not a proper issue for her to raise when it was the agency's primary argument at the section 364 hearing and the juvenile court's apparent basis for refusing mother an evidentiary hearing. The agency has now shifted its argument to challenge the relevancy of the issues raised to the juvenile court and on appeal.

Mother's counsel initially stated to the court he told mother she had no standing to challenge these issues because the case was being dismissed. Mother's counsel, however, did not waive this point for his client. Mother's counsel specifically argued mother "vehemently" opposed the agency's recommendation because it was not in Armando's best interests. Elaborating on his earlier statement mother lacked standing, mother's counsel stated it was his understanding that as soon as he requested a contested hearing, the agency would object that mother lacked standing to request a contested hearing.

Mother's counsel expressly stated mother wanted a contested hearing. Mother's counsel further argued mother was challenging the dismissal of the dependency, Armando's placement, and Armando's need for more services. Read in context, the initial statement by counsel to the court was mother's counsel's explanation to mother and the court concerning the *agency's* position. It was not a concession by mother's counsel his client did not have standing. It is clear from counsel's further statements he and mother sought a contested section 364 hearing in which they could present additional evidence. Mother's counsel attempted, to no avail, to persuade the juvenile court to have a contested evidentiary hearing. Neither mother nor her counsel waived or forfeited these issues for appellate review.

Mother contends she had standing to raise the issues in a contested evidentiary hearing of whether the juvenile court: (1) should retain its dependency jurisdiction, (2) grant mother Armando's physical custody, and (3) provide family maintenance services to Armando. *Chantal S*. and *Aurora P*. support mother's contention she has a right to

11.

have an evidentiary hearing on these points. Although *Aurora P*. clearly establishes mother's right to challenge the agency's recommendation to dismiss dependency jurisdiction, it further establishes mother bears the burden of proof on that issue because the statutory presumption is for termination of the dependency action. (*In re Aurora P*., *supra*, 241 Cal.App.4th at pp. 1154-1155, 1158-1163; *In re Chantal S.*, *supra*, 13 Cal.4th 196.)

*Chantal S*. and *Aurora P*. also stand for the proposition mother can challenge the agency's recommended exit orders. If mother has the right to a hearing on the juvenile court's jurisdiction and the exit orders it issues, she undeniably has standing to raise these matters in a contested section 364 hearing. The agency's position to the contrary rests on a precarious legal foundation.

The agency argues the issues mother raises were outside the scope of a section 364 hearing because mother's challenge on the issue of termination of the dependency action was only a general contention, and her specific contentions challenged the court's exit orders. The agency characterizes mother's evidentiary contentions as irrelevant to the purpose of the hearing. In support of its argument, the agency relies on an earlier decision interpreting section 364, subdivision (c), *In re Elaine E*. (1990) 221 Cal.App.3d 809, 814 (*Elaine E*.).

In *Elaine E*. a dependency proceeding was brought on behalf of three minors because a father had sexually molested his adopted daughter. Although the mother was awarded physical custody of the children, the father was prohibited from contacting the minors except with probation department supervision. The department recommendation after years of dependency was to have the action dismissed. The father sought an order from the juvenile court permitting him some sort of contact with the children. (*Elaine E.*, *supra*, 221 Cal.App.3d at p. 812.) The juvenile court, however, would not permit a hearing at the section 364 hearing unless the father first brought a petition alleging changed circumstances pursuant to section 388. (*Elaine E.*, at p. 812.) The *Elaine E.*

12.

court held the visitation order was outside the scope of section 364, and because the parent failed to present any evidence regarding continued visitation, he was not denied due process of law. (*Elaine E.*, *supra*, at p. 814.)

The agency relies on *Elaine E.* for the proposition mother's contentions were not properly before the juvenile court. Unlike the father in *Elaine E.* who had no evidentiary showing to make to the court, mother sought to present evidence on all of the issues she raised at the hearing. Another distinguishing procedural difference between this case and *Elaine E.* is that there was a hearing changing custody in *Elaine E.* whereas here there was no court hearing on the issue of Armando's custody. The agency summarily changed Armando's custody to father and mother never had a judicial determination on this issue.

Other courts have distinguished and declined to follow *Elaine E.*, finding issues related to custody and visitation are relevant to exit orders pursuant to sections 364 and 362.4. (*In re Michael W.* (1997) 54 Cal.App.4th 190, 196; *In re Roger S.* (1992) 4 Cal.App.4th 25, 29-30.) The legal premises of *Elaine E.* have been questioned, if not undermined, by subsequent authorities such as *In re Chantal S.* and *In re Aurora P.* *Elaine E.* is procedurally distinguishable from the instant action because the parent there did not seek to present additional evidence, mother sought to have such a hearing here, and there was no prior judicial hearing on the change of custody from mother to father. Even if *Elaine E.* remains viable, its holding is inapplicable to this case.

The agency continues its challenge to the relevancy of mother's contentions, arguing mother's arguments concerning standing misstate the issue. The agency argues *In re Aurora P.* is not controlling on this court, the juvenile court's ruling did not violate its precepts, and our prior opinion in *In re Sarah M.* rejected a parent's attempt to obtain an exit order for continued conjoint therapy after the juvenile court terminated its jurisdiction under section 364.

13.

In *Sarah M*., the mother challenged the dismissal of the dependency action because she sought to continue the juvenile court's jurisdiction in order for the parents to receive conjoint therapy through child protective services. (*In re Sarah M*., *supra*, 233 Cal.App.3d at pp. 1499-1500.) This court noted the issue of conjoint therapy was not a cry for continued supervision by the court through a dependency action, but a plea for financial aid. We rejected this as a basis for the juvenile court continuing its jurisdiction, noting the evidence showed the minor was no longer at risk. (*Id*. at p. 1500.)

One holding in *Sarah M*. was that the juvenile court did not have to issue a visitation order. (*In re Sarah M*., *supra*, 233 Cal.App.3d at pp. 1500-1501.) *Chantal S*. rejected that argument, expressly overruling *Sarah M*. on that point. The Supreme Court in *Chantal S*. further explained sections 362.4 and 364, subdivision (c) "authorize the juvenile court to issue an appropriate protective order conditioning custody or visitation on a parent's participation in a counseling program." (*In re Chantal S*., *supra*, 13 Cal.4th at p. 204.) *Chantal S*. rejected the reasoning in *Sarah M*. that the juvenile court was not required to fashion other exit orders, such as continued counseling by the parents. We therefore reject the agency's argument *Sarah M*. remains viable on the question of whether a parent is entitled to an evidentiary hearing on exit orders issued by a juvenile court when the court terminates its jurisdiction. Family maintenance services may be provided until the dependent reaches the age of majority. (*In re Aurora P*., *supra*, 241 Cal.App.4th at p. 1154, fn. 8; *In re Joel T*., *supra*, 70 Cal.App.4th at pp. 267-268.)

Furthermore, as later cases such as *In re J.T*., *supra*, 228 Cal.App.4th 953 have explained, the statutory scheme of dependency law differs from family law because juvenile dependency courts are charged with making orders consistent with the best interests of the child. It was error for the juvenile court to effectively punt and delegate to family court the issues concerning Armando's custody and his need for additional services, services Armando may be entitled to even after the juvenile court terminates its dependency jurisdiction.

*Chantal S.*, *Aurora P.*, and *J.T.*, are well reasoned; we adopt their holdings and apply them here. Contrary to the agency's argument on appeal, the juvenile court did not follow the precepts of *Aurora P*. In fact, the juvenile court denied mother *any* evidentiary hearing on the issues she attempted to raise related to the court's jurisdiction and exit orders. This procedure is contrary to those discussed and adopted in *Chantal S.* and *Aurora P*. Also, the change of Armando's custody to father was never considered in any judicial hearing. We agree with mother that implicit in the reasoning of *Aurora P*. is the premise the parties—whether they are the parents, minor, or agency—have standing to challenge the juvenile court's jurisdiction. We reject the agency's argument the issues mother attempted to raise by way of an evidentiary hearing were irrelevant to these proceedings. Similarly, the agency's argument to the juvenile court that mother lacked standing to have a hearing on these matters lacks merit.[3]

### *Failure to Hold Contested Hearing*

The agency finally argues any error in the juvenile court's order is harmless. The agency marshals the evidence in the social workers' reports to support its conclusions. The flaw in the agency's argument is the absence of potential evidence to the contrary that could have been developed only in a contested hearing. Mother sought a contested section 364 hearing and was denied any opportunity to testify or present other evidence on the legally erroneous basis she lacked standing. We cannot discern what evidence mother could have presented at the hearing that may have contradicted or elaborated on evidence in the social workers' reports. What little we can glean from the social workers'

---

[3]The agency also sets forth an argument involving statutory interpretation of, and whether the parents are permitted to present evidence based on a motion pursuant to, section 350, subdivision (c) to dismiss a petition based on this court's decision in *In re Eric H*. (1997) 54 Cal.App.4th 955, 968-969. *Eric H*. discussed section 350 as being the equivalent of a statutory nonsuit in a dependency action that is employed when the agency fails to meet its burden of proof. When such a procedure is employed, there is no evidence taken from the parents. (*Eric H.*, at pp. 968-969; see *In re Roberto C*. (2012) 209 Cal.App.4th 1241, 1251-1253.) *Eric H*. involved an early stage proceeding totally different from a section 364 final stage hearing, it acts similar to a nonsuit, and it is factually and legally inapposite to the proceedings here.

15.

reports is mother consistently told social workers father was the wrong parent to have physical custody of Armando because his abuse of Armando was the very cause of Armando's misbehavior. Mother was denied the opportunity to present any evidence to corroborate her concerns.

We therefore decline the agency's invitation to review the record for harmless error where there is a void in the evidence created by the juvenile court's failure to have a contested hearing. Due process includes the right to be heard, adduce testimony from witnesses, and to cross-examine and confront witnesses. (*In re Malinda S*. (1990) 51 Cal.3d 368, 383, fn. 18.) These procedures were not followed in this section 364 hearing. We are left to guess as to what evidence mother may have presented, an impossible task without a record based on an evidentiary hearing. We are a court of review, not a tribunal of speculation. The juvenile court erred in failing to conduct an evidentiary hearing on the issues mother sought to raise at the section 364 hearing.

## DISPOSITION

The orders of the juvenile court dismissing the dependency action, as well as denying mother a contested evidentiary hearing on the issues of the juvenile court's jurisdiction, Armando's custody, and further potential services for Armando are reversed. The case is remanded for a contested section 364 evidentiary hearing.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
POOCHIGIAN, J.

16.