Filed 11/29/23  In re C.E. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| In re C.E. et al., Persons Coming Under the Juvenile Court Law. | C097499 |
| YUBA COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.E., <br><br> Defendant and Appellant. | (Super. Ct. Nos. JVSQ2100087, JVSQ2100088) |

Appellant D.E. (father), father of the minors, appeals from the juvenile court's orders denying his petitions for change of court order, terminating dependency jurisdiction, and awarding custody of the minors to A.B. (mother).  (Welf. & Inst. Code,[1]

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

§§ 364, 388, 395.) Father contends the juvenile court denied him due process when it terminated dependency jurisdiction and denied his request for an evidentiary hearing on the exit orders and his section 388 petitions. He further contends his appeal has not been rendered moot by the termination of dependency jurisdiction. We will reverse and remand for limited proceedings related to the exit orders.

BACKGROUND

Father filed a previous and related appeal from an order issued by the juvenile court in Yuba County (*In re C.E.* (July 25, 2023, C096291) [nonpub. opn.]). We take judicial notice of the record in the related appeal, as well as this court's prior order and opinion in that case. (Evid. Code, § 452, subd. (d).)

*October 24, 2021, Incident of Abuse*

Father and mother lived in separate homes and shared joint legal and physical custody of the two minors, C.J.E. and C.W.E. The family came to the attention of the Yuba County Health and Human Services Department (Department) when, in October 2021, child and adult protective services received an emergency referral regarding injuries then six-year-old minor C.J.E. received at the hand of father. Patricia Gurney, a nurse practitioner, confirmed the injuries were the result of physical abuse while in father's care. Minor C.W.E., then 13 years old, reported having seen father pick up C.J.E. by his chest in anger. (*In re C.E.*, *supra*, C096291.)

*Prior Incidents of Abuse*

Mother reported there had been prior incidents of child abuse by father against C.W.E., which was corroborated by a report of the family's prior child welfare history that revealed multiple reports of physical abuse by father against C.W.E., all of which father repeatedly denied. (*In re C.E.*, *supra*, C096291.)

*Current Dependency Proceedings*

On November 2, 2021, the Department filed dependency petitions on behalf of the minors pursuant to section 300, subdivisions (a) and (c), alleging father inflicted serious

physical harm on C.J.E. during the October 2021 incident and serious physical and emotional harm on C.W.E. (*In re C.E.*, *supra*, C096291.) At the November 3, 2021, detention hearing, the court ordered the minors detained from father and placed with mother. The court also ordered twice weekly supervised visits for father. (*Ibid.*)

*Jurisdiction*

The jurisdiction report filed November 24, 2021, set forth the Department's evidence in support of the petitions. (*In re C.E.*, *supra*, C096291.) In an addendum report filed January 10, 2022, the Department reported that father was communicating with C.W.E. in violation of the court's orders. C.W.E. was exhibiting mental health issues and was described as "unstable and very fragile." It was further reported that father "still has taken zero accountability" regarding his actions and how they affected the minors. The Department recommended the court suspend father's visitation until father could "show he can follow the rules and implement the services being offered into his life, as well as take accountability for his actions." (*Ibid.*)

The contested jurisdictional hearing spanned several days, finishing on March 3, 2022. Mother testified, corroborating the allegations in the petitions. (*In re C.E.*, *supra*, C096291.) After hearing oral argument and considering the jurisdiction and addendum reports, the court sustained the allegations in the petitions. The court ordered twice-weekly supervised visits between father and the minors, as well as therapeutic visits. (*Ibid.*)

*Disposition*

The March 2022 disposition and the April 2022 addendum reports stated the minors remained in the care of their mother. C.W.E. indicated he was not ready to have visits with father but was interested in therapeutic visits. Father reportedly denied any wrongdoing and stated he believed the minors were lying. Father had been uncooperative or unwilling to work with the Department on multiple occasions, refusing to follow visitation rules, having unsupervised contact with one or both of the minors, and

canceling visits without reason. On several occasions, C.W.E. refused visits with father, and refused therapeutic visits with father and the paternal grandparents.

At the disposition hearing on March 30, 2022, the court ordered father to submit to a psychological examination to determine appropriate services and to participate in a 52-week, in-person batterer's treatment program and therapeutic visits with the minors.[2]

*Psychological Evaluation*

Father participated in a psychological evaluation completed by Dr. Wuehler, who opined that father "does suffer from a mental disturbance that renders him problems caring for his children," and noted that father suffered from "the inability or unwillingness to recognize how his behaviors impact his children (and possibly others)." Dr. Wuehler also opined that father could benefit from reunification services if he decided to "participate correctly," noting father had the intelligence and mental stability to benefit but his attitude and willingness were in question. Dr. Wuehler recommended that father participate in an in-person, 52-week anger management course, another parenting course, and 30 sessions of individual counseling.

*Visitation*

By May 2022, C.W.E. was reportedly willing to participate in therapeutic telephone visits with father but remained unwilling to visit with father in person. However, at the May 18, 2022, interim review hearing, the court suspended visits between C.W.E. and father because C.W.E. had attempted to hurt himself following a supervised telephonic visit with father. According to the June 2022 interim review report, C.W.E. stated he did not want any visitation with father or the paternal grandparents. Visits continued between father and C.J.E. and those visits were reportedly positive and appropriate.

---

[2] Father appealed from the juvenile court's dispositional order. We affirmed the court's order on July 25, 2023. (*In re C.E.*, *supra*, C096291.)

4

Between June and August 2022, visits between father and C.J.E. went well, while C.W.E. continued to refuse any type of contact with father.

*Participation in Services*

In May 2022, father began attending his 52-week anger management course given by Manalive. On September 8, 2022, he claimed to have completed the 52-week course even though he did not begin the class until May 2022. He could not provide any information on the class, had no documentation to confirm his attendance, and could not remember where he participated. He attended individual counseling with minimal progress, and he continued to maintain that all of the allegations in the petitions were "lies." As of September 28, 2022, father had not completed his case plan objectives.

While father had attended all of the child family team meetings, he was hostile and argumentative, denied accountability, and questioned everything, such that his participation was not meaningful. In addition, father refused to sign a release of information allowing the Department access to the information and documentation necessary to confirm his participation in the anger management course. Similarly, while father claimed to have completed an eight-hour parenting course, he made no attempt to provide certification of completion to the Department. Father's therapist opined that, even if father were taught the tools of how to properly engage in interactions, "very little progress may be made until [father] can have a realization that his alleged actions have been detrimental to his children."

*Status Review Reports*

In its September 28, 2022, status report, the Department recommended that the court terminate father's reunification services due to his failure to complete or make substantial progress in the 52-week anger management course, his minimal progress in individual counseling, and his failure to demonstrate any actual change in behavior.

On October 6, 2022, the Department filed a memorandum to inform the court and all parties about a recent incident involving mother and the minors, during which C.W.E.

5

became angry, punched the dashboard, and then punched mother while she was driving. In response, mother reached over and hit C.W.E. with the back of her hand and told him to stop. C.W.E. explained the incident was a misunderstanding and admitted he became upset and punched the dashboard and "accidentally punched" mother several times. In response, mother slammed on the brakes, pulled the car over to avoid getting into an accident, and grabbed both of C.W.E.'s wrists asking him, "If I let you go, will you punch me?" Both minors reported they felt safe in mother's care, that mother never used physical violence, and that mother did not hit C.W.E. out of anger but rather to avoid getting into an accident.

Mother reported she tried to block C.W.E.'s punches but ended up hitting his bicep with the back of her hand. She immediately pulled the car over and grabbed C.W.E.'s wrist tightly to stop him from hitting her. After some time, C.W.E. calmed down and they returned home, where mother contacted C.W.E.'s therapist to schedule an emergency session. Mother felt that, in retrospect, she could have handled the situation differently, but she reacted in the moment and her sole focus was on avoiding a car accident.

The Department concluded the encounter between mother and C.W.E. was an isolated incident and offered to provide mother with trauma-based parenting classes to help in similar situations. Mother agreed to learn different methods to deal with C.W.E.'s trauma-based episodes.

*Father's Section 388 Petitions*

On October 10, 2022, father filed two virtually identical section 388 petitions requesting that the court change its November 3, 2021, order appointing attorney Mark Woods as counsel for both minors, alleging the minors' interests were no longer aligned and each minor required his own separate counsel. Father's petitions also requested that the court remove social worker April Williams and assign a new social worker, alleging Williams was biased against him and not providing all of the relevant information to the

court.  Attachments to the petitions included the supporting declaration of father and his attorney, medical notes from Sutter Health, the declaration of Dr. Suzanne Starling (father's expert in child abuse pediatrics), and certifications of father's completion of a 52-hour anger management class and an 8-hour parenting class.

*Final Review Hearing*

At the October 10, 2022, review hearing, the Department recommended the court terminate father's reunification services arguing, "the father has made it abundantly clear that he does not wish to participate in the Department's services.  He would rather go about it on his own."  The Department further recommended the court award sole physical and legal custody of the minors to mother and terminate dependency jurisdiction.  Father argued he had engaged in all of the court-ordered services and made progress on his case plan and requested a contested hearing on the court's termination of jurisdiction and exit orders, arguing that conditions still existed to warrant the court's continued oversight.  Father also requested a ruling on his section 388 petitions.

The court summarily denied father's section 388 petitions, finding he did not make the required prima facie showing to warrant an evidentiary hearing.  The court then granted mother full custody of the minors and terminated dependency jurisdiction.  The court expressly provided for supervised and therapeutic visits between father and C.J.E.  The subsequent minute order reflected the court's visitation order, to wit, that father's visitation would consist of twice-monthly supervised visits with C.J.E. and no visits with C.W.E. unless consented to by C.W.E.  The order noted the right of both minors to decline visitation with father.  The reasons set forth for supervised visitation were that father had either not completed or not made substantial progress in his domestic violence treatment program for offenders, his anger management training, or his individual counseling.

Father timely appealed the October 12, 2022, order terminating dependency jurisdiction, setting visitation exit orders, and denying his section 388 petitions without an evidentiary hearing.

## DISCUSSION

### I

#### *Mootness*

Father first contends that, because he appealed from the termination of jurisdiction and the visitation exit orders, those orders are not final and, therefore, his appeal is not moot. (*In re Carrie M.* (2001) 90 Cal.App.4th 530, 533.)

As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. (*In re N.S.* (2016) 245 Cal.App.4th 53, 60-63; *In re Michelle M.* (1992) 8 Cal.App.4th 326, 328-330.) Aside from the exceptions for an " 'issue of broad public interest that is likely to recur' " or " 'a likelihood of recurrence of the controversy between the same parties or others' " (*In re N.S.* at p. 59), none of which father establishes here, an appellate court will exercise discretion to hear an appeal from orders in a terminated dependency proceeding only if the orders "continue to adversely affect appellant" (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548) and the appellate court can grant effective relief. Thus, " 'questions of mootness must be decided on a case-by-case basis.' " (*Id.* at p. 1547; *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.)

Here, father's contentions regarding termination of dependency jurisdiction and the exit orders issued at that time are not moot, as those orders about which he complains continue to adversely affect him, as we explain in part II of the Discussion of this opinion. However, as we further explain in part III of the Discussion of this opinion, father's claim regarding denial of his section 388 petitions is moot but, even if it were not moot, the claim lacks merit.

8

II

*Termination of Dependency Jurisdiction and Exit Orders*

Father contends the juvenile court erred when it denied his request for an evidentiary hearing regarding the termination of dependency jurisdiction and the exit orders issued therewith. He argues the court's denial of his request to demonstrate conditions still existed to justify the continued exercise of the court's jurisdiction and that the recommended exit orders were not appropriate denied him due process.

Where, as here, the dependency was established without removing the minors from mother's home, the juvenile court "can order family maintenance services to ameliorate the conditions causing the child to be subject to the court's jurisdiction. After the child is declared a dependent, the juvenile court must review the status of the child every six months. [Citations.] Section 364 provides the standard when the child under the supervision of the juvenile court is not removed from the physical custody of the parent or guardian. [Citation.] Section 364 also applies in cases where a child has been removed from the physical custody of a parent but is later returned." (*In re Armando L.* (2016) 1 Cal.App.5th 606, 614.)

"At the section 364 review hearing, the juvenile court is not concerned with reunification, but in determining whether the dependency should be terminated or supervision is necessary. [Citations.] The juvenile court makes this determination based on the totality of the evidence before it, including reports of the social worker who is required to make a recommendation concerning the necessity of continued supervision." (*In re Armando L.*, *supra*, 1 Cal.App.5th at p. 615.) "[U]nder section 364(c), the juvenile court must terminate dependency jurisdiction unless either the parent, the guardian, the child, or the social services agency establishes by a preponderance of the evidence that the conditions justifying assumption of jurisdiction exist or will exist if supervision is withdrawn. Thus, in the absence of a contrary showing at the review hearing, termination

9

of dependency jurisdiction will be the 'default result.' " (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1155-1156; *In re Armando L.*, at p. 615.)

*Termination of Dependency Jurisdiction*

Here, although father's counsel repeatedly requested an evidentiary hearing regarding termination of dependency jurisdiction, he did not indicate he intended to present any evidence regarding the need for continued court supervision. Instead, he requested the evidentiary hearing so he could present evidence to demonstrate he engaged in, and made progress in, court-ordered services. However, father's engagement in services had no bearing on whether continued supervision of the minors' placement with mother was necessary. At the section 364 hearing, "the juvenile court is not concerned with reunification, but in determining whether the dependency should be terminated or supervision is necessary." (*In re Armando L.*, *supra*, 1 Cal.App.5th at p. 615.) Section 364, subdivision (c), "does not allow the parties to present evidence on *any* issue, as appellant appears to assume; rather, the court's inquiry (and parties' right to present evidence) is limited to whether continued supervision is necessary." (*In re Elaine E.* (1990) 221 Cal.App.3d 809, 814.) As the juvenile court remarked, "The reason the case was brought before the Court was the physical abuse to [the minors]" by father, not the actions of mother. The Department asserted that continued court supervision was not necessary and recommended that the court award mother full legal and physical custody of the minors, reporting that mother completed all of her family maintenance services and the minors were doing well in her care. Thus, reunification with father was no longer a concern. (See *In re Armando L.*, at p. 615.)

Father also argued the October 6, 2022, incident in the car between C.W.E. and mother, and the information father received from C.J.E. that there was "another male" living at mother's house, demonstrated that conditions existed in mother's home which required continued court involvement. But father did not request a hearing to present evidence in this regard, nor did he proffer that he had relevant evidence relating to

10

conditions in mother's home other than that which was already attached to his section 388 petitions or provided in the Department's reports. (*In re Tamika T.* (2002) 97 Cal.App.4th 1114, 1124 [while not required, a proper offer of proof gives the juvenile court an opportunity to determine if there truly is a contested issue of fact].) Thus, the juvenile court did not err in denying father's request for an evidentiary hearing on termination of dependency jurisdiction.

*Exit Orders*

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make exit orders regarding custody and visitation. These orders become part of any family court proceeding concerning the same child and will remain in effect until they are modified or terminated by the family court." (*In re Armando L.*, *supra*, 1 Cal.App.5th at p. 616.)

Father first contends the court decreased his visitation from once weekly to twice monthly without allowing him to present evidence as to why such decrease was not appropriate. He argues, in passing, that if he "had an opportunity to, he would have opposed such a dramatic reduction in his already limited time with C.J.E." To avoid forfeiture of his claim of error, father had the burden to support his argument with analysis and citation to evidence in the appellate record. (Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in appellate brief must be supported by citation of authority].) He did not do so. To the extent this observation, made in passing, is intended to constitute an argument, it must be deemed forfeited. (*Ibid.*; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [lack of authority or analysis constitutes forfeiture].) Moreover, father had the opportunity to oppose the reduction and argue for more extensive visitation upon termination of dependency jurisdiction -- he simply did not avail himself of that opportunity.

Next, father argues the court's exit order improperly delegates to the minors the authority to determine whether visits will occur. As we explain below, to the extent the

order delegates to C.J.E. that authority, we agree. "The power to determine the right and extent of visitation by a noncustodial parent in a dependency case resides with the juvenile court and may not be delegated to nonjudicial officials or private parties, including the parents themselves. [Citations.] The rule of nondelegation applies to exit orders issued when the dependency jurisdiction is terminated." (*In re Armando L.*, *supra*, 1 Cal.App.5th at p. 616; see also *In re Chantal S.* (1996) 13 Cal.4th 196, 213-214; *In re A.C.* (2011) 197 Cal.App.4th 796, 799.)

A juvenile court can properly delegate "the ministerial tasks of overseeing the right as defined by the court. . . . Such matters as time, place and manner of visitation do not affect the defined right of a parent to see his or her child and thus do not infringe upon the judicial function." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757; accord, *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.) But, "[i]f the juvenile court orders visitation, 'it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur.' [Citation.] When the court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion." (*In re Ethan J.* (2015) 236 Cal.App.4th 654, 661; accord, *In re Korbin Z.* (2016) 3 Cal.App.5th 511, 519.) Neither the guardians nor the children may be given absolute discretion to determine whether visitation will occur at all. (*In re M.R.* (2005) 132 Cal.App.4th 269, 274; *In re S.H.* (2003) 111 Cal.App.4th 310, 317-320.) "Only when a visitation order delegates . . . the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine." (*Moriah T.*, at p. 1374.)

As relevant here, the minute order contains the following language regarding visitation: "The father shall continue supervised only visits, . . . two Sundays a month with [C.J.E.]. The father can allow the paternal grandparents to be present if he wishes. . . . [¶] The father shall have no type of visitation with [C.W.E.], unless

12

[C.W.E.] stipulates he would like to visit. In the event [C.W.E.] would like to visit, he can attend the supervised visitation . . . with his brother, [C.J.E.]. Both children have the right to decline visitation."

For some time prior to the hearing, father's only visitation was with C.J.E. Visits between C.W.E. and father had been suspended since May 2022. The court's order properly allowed for C.W.E. to resume visits with father or continue to decline visitation in keeping with the existing suspension. However, the order giving C.J.E. the absolute discretion to determine whether visits would occur at all was not proper. (*In re M.R.*, *supra*, 132 Cal.App.4th at p. 274; *In re S.H.*, *supra*, 111 Cal.App.4th at pp. 317-320.) Given the improper delegation of authority to C.J.E., "we must remand for further proceedings at which the juvenile court shall clarify the terms and conditions applicable to [father's] visitation . . . ." (*In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136.)

Finally, father argues the juvenile court's written visitation order is not consistent with the court's oral pronouncement at the hearing. In particular, he argues the court stated on the record that father would have supervised visitation with C.J.E. as well as therapeutic visitation with C.J.E., but the written exit order provided for twice monthly supervised visitation with C.J.E. only and did not reference therapeutic visits. Father is correct. The minute order omits the therapeutic visitation between father and C.J.E. as referenced in the juvenile court's verbal order. Where, as here, there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Mesa* (1975) 14 Cal.3d 466, 471.) We will remand with directions to the juvenile court to exercise its inherent power to correct its records so as to make those records reflect the true facts. (*People v. Schultz* (1965) 238 Cal.App.2d 804, 807; *People v. Flores* (1960) 177 Cal.App.2d 610, 613; *People v. Jack* (1989) 213 Cal.App.3d 913, 915-916 and cases cited therein.)

13

III

*Denial of Section 388 Petitions Without a Hearing*

Lastly, father argues the juvenile court abused its discretion in denying his section 388 petitions without a hearing, arguing the petitions met the threshold requirement of a prima facie showing of new evidence and changed circumstances. Neither the minors' appointed counsel nor the continued assignment of the social worker on the case continue to adversely affect father after the termination of dependency jurisdiction. Thus, his appeal challenging the denial of his section 388 petitions is moot. Yet, even if father's claims were not moot or we were to exercise our discretion to reach the otherwise moot issue, his contention that the court erred in denying his petitions without a hearing lacks merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minor's best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (Cal. Rules of Court, rule 5.570(h)(1)(D).) In assessing the petition, the court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

The petition must be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 5.570(a).) Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d).) We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Here, father's petitions first requested that the court declare a conflict as to the minors' counsel, Mark Woods, alleging the minors' interests were no longer aligned and each minor required his own counsel. However, minors' continued legal representation is irrelevant since dependency jurisdiction has been terminated and counsel relieved. Thus, his contention of error is moot. In any event, father can only speculate whether removing attorney Woods and appointing new counsel for C.J.E. would have accomplished the goals suggested by father, namely, more unsupervised time with C.J.E. While father argued C.J.E. needed an attorney who wanted father to succeed and who would proactively monitor C.W.E., and not minimize his needs or "constantly blame one parent for them," success or failure in services was no longer an issue. Moreover, father did not make a showing that more unsupervised time was actually in C.J.E.'s best interest, but only that the minor desired it. It is equally possible that new appointed counsel would have determined *less* unsupervised time with father was in C.J.E.'s best interest.

Father's petitions also requested that the court remove social worker April Williams and assign a new social worker so that father "can make progress in his case plan and have all the evidence in front of the court." The petitions alleged that Williams was biased against father, had not presented all the relevant evidence to the court, failed to obtain color photographs, and used selective reporting in her reports. Again, the issue of which social worker is assigned to the case is irrelevant after the termination of dependency jurisdiction. In any event, Williams was not appointed or assigned by the juvenile court. Thus, the request was not a request to change or modify a prior court order.

The juvenile court did not abuse its discretion in denying father's section 388 petitions without a hearing.

DISPOSITION

The October 12, 2022, exit order governing father's visitation with C.J.E. is reversed and the matter is remanded to the juvenile court for the limited purpose of

15

issuing new visitation orders specifying the frequency and duration of supervised visits and therapeutic visits between father and C.J.E.  In all other respects, the juvenile court's orders are affirmed.


/s/
Wiseman, J.*


We concur:


/s/
Mauro, Acting P. J.


/s/
Mesiwala, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.