Filed 12/14/20 In re E.S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re E.S., a Person Coming Under the Juvenile Court Law. | B304050<br><br>(Los Angeles County Super. Ct. No. 18CCJP08208E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>LAKHWINDER S.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Lakhwinder S., presumed father of one-year-old E.S., appeals from the juvenile court's order terminating dependency jurisdiction with an order granting E.S.'s mother, Luisa A., sole legal and physical custody and limiting Lakhwinder to monitored visitation. Lakhwinder contends the court's order terminating jurisdiction was not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Petition on Behalf of Luisa's Older Children*

In December 2018, while Luisa was pregnant with E.S., the Los Angeles County Department of Children and Family Services (Department) filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1),[1] on behalf of Luisa's four older children, then between the ages of five and 17. The petition alleged Luisa had mental and emotional problems that rendered her incapable of providing the children regular care and placed them at risk of serious physical harm. The petition also alleged Luisa had created a detrimental and dangerous home environment by allowing Lakhwinder, who was not the father of Luisa's older children, to live in the home despite his mental and

_____

[1]     Statutory references are to this code.

2

emotional problems, including self-mutilating behavior, and his alcohol abuse.

On December 27, 2018, the juvenile court ordered Lakhwinder to move out of the home and have no contact with Luisa's children.

2. *The Detention of E.S.*

After E.S. was born in February 2019, a new referral to the Department was generated based on the allegations in the pending petition regarding her half-siblings. When interviewed by a Department social worker on March 4, 2019, Luisa said she had met Lakhwinder in December 2017 while they were both involuntarily hospitalized with psychiatric issues. Shortly after they were released, Luisa had invited Lakhwinder to move into the home she shared with her children. Luisa explained the children were afraid of Lakhwinder because he drank excessively and said he wanted to harm himself. On one occasion Lakhwinder had cut his arm and used his blood to write a "love note" to Luisa. Luisa reported she had been compliant with the court's order prohibiting contact between Lakhwinder and her older children.

Before E.S. was born, Luisa had obtained permission from the Department for Lakhwinder to be present at the birth; and he stayed with her during her three-day hospitalization. Luisa reported she had seen him take his prescribed medication during that time and he appeared stable. She said she was planning to take the baby to a friend's house so Lakhwinder could visit the baby without violating the court order. The social worker explained the Department's concerns about the baby's safety while visiting her father. Luisa stated she understood the

3

concerns but did not believe Lakhwinder would harm E.S. Luisa expressed her desire to continue a relationship with Lakhwinder.

Regarding her mental health history Luisa reported she had been involuntarily hospitalized twice due to psychiatric issues. In 2014 she was placed on a psychiatric hold after behaving erratically during a traffic stop. She was diagnosed with depression and was told she had a panic attack. She was not medicated during the hospital stay and was discharged without prescription medication. Luisa explained the incident had been triggered by learning of her then-husband's infidelity.

In December 2017 Luisa was again placed on an involuntary psychiatric hold after her brother became concerned about her uncontrollable screaming and crying. She spent approximately five days in the hospital and was initially diagnosed with schizophrenia, but the diagnosis was later changed to bipolar disorder. She had been given medication while in the hospital but had been discharged without a prescription. Luisa said she had been under a great deal of stress because her husband had been murdered and she had been attending the assailant's criminal trial every day. Because of the trial, she had not been able to work; could not sleep; and did not know how she would pay her bills. She believes this stress led to her "episode."

Luisa reported she had been seeing a therapist weekly and was learning strategies to cope with stress and feel calmer. She did not believe the bipolar diagnosis was accurate and had been attempting to get approval for a psychiatric evaluation but was encountering problems with her insurance. She said, if she were prescribed medication, she would take it.

The social worker observed Luisa's interactions with E.S. were positive and the baby appeared healthy and well cared for. Luisa's four older children told the social worker they felt safe with their mother. Luisa's oldest daughter said Luisa seemed stable and was capable of caring for the baby.

The social worker spoke to Lakhwinder by telephone on March 6, 2019. The social worker reported Lakhwinder sounded highly intoxicated; he was belligerent, did not make sense and said he wanted to kill himself. A few days later Lakhwinder was placed on a two-day involuntary psychiatric hold. Lakhwinder later told the social worker he had one beer prior to their March 6 conversation and did not remember it. He said he did not normally drink and he did not have thoughts of hurting himself. When the social worker told Luisa about her initial call with Lakhwinder, Luisa agreed not to allow him to visit the baby until a court order was in place.

On March 13, 2019 the Department obtained authorization to detain E.S. from Lakhwinder. E.S. remained in Luisa's custody.

The Department filed a petition on March 15, 2019 pursuant to section 300, subdivision (b)(1), alleging Luisa's and Lakhwinder's mental and emotional problems rendered them incapable of providing regular care to E.S. and placed E.S. at substantial risk of serious physical harm.[2] The petition also

---

[2] Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the

alleged Lakhwinder's history of substance abuse and current abuse of alcohol placed E.S. at substantial risk of serious physical harm.

In the detention report filed the same day as the petition, the Department recommended E.S. be detained from Lakhwinder. The Department stated E.S. could safely remain with Luisa because Luisa had been addressing her own mental health and cooperating with the Department, and had not allowed Lakhwinder to return to the home. At the detention hearing on March 18, 2019 E.S. was detained from Lakhwinder and released to Luisa.

3. *The Jurisdiction/Disposition Report*

In a report filed on April 22, 2019 the Department stated E.S. was healthy and remained stable in Luisa's care.

The report provided additional information regarding Luisa's mental health history and treatment. After she was released from the involuntary psychiatric hold in December 2017, Luisa had attempted to obtain a psychiatric evaluation and medication, if necessary. However, once she became pregnant with E.S., her obstetrician told her not to take any medication. Luisa had been seeing a therapist weekly since June 2018. The therapist reported Luisa had made progress in establishing coping skills and was proactive in utilizing the resources available to her. Luisa had also enrolled in a 16-week parenting class and a 12-week domestic violence class.

---

child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

In interviews with the social worker Luisa said she had been concerned with Lakhwinder's behavior prior to the Department's involvement. Lakhwinder did not regularly take his prescribed medication, and he drank excessively. While living with Luisa in 2018, Lakhwinder was hospitalized for psychiatric issues on at least one occasion. During one incident he became upset and hit himself on the head with a frying pan in front of one of Luisa's children. In June 2018 Luisa told Lakhwinder to move out because she was afraid for her children. After two months she allowed him to return because he said he had stopped drinking. When Lakhwinder began drinking again, Luisa told him he had to leave by the end of November. At that point the Department intervened, and Lakhwinder moved out.

Luisa understood Lakhwinder could not have contact with her older children, but she stated she would otherwise consider allowing him to return to the home if he had a job, completed a substance abuse program and attended therapy.

The Department reported Lakhwinder had been in therapy since January 2019. He had been diagnosed with "major depressive disorder, severe with psychotic features." Lakhwinder admitted he drank alcohol and used methamphetamine to cope with stressors, and he tested positive for methamphetamine in April 2019.[3] However, he said he would be compliant with his medication and do whatever was necessary to reconcile with Luisa and live with her and E.S.

Lakhwinder had monitored visits once per week with E.S. Generally, Lakhwinder engaged with E.S. appropriately.

_____

[3] On April 30, 2019 the Department filed a first amended petition, adding methamphetamine abuse to the allegation regarding Lakhwinder's substance abuse.

However, on one occasion he remained upset that he had gotten lost on the way to the visit and destroyed his telephone by breaking it into small pieces and biting it.

The Department recommended E.S. be removed from Lakhwinder and released to Luisa. The Department believed Luisa had limited coping skills and needed continued treatment to address her past trauma and make appropriate choices for her children. The Department also expressed concern Luisa lacked insight into the dangers posed by Lakhwinder's untreated substance abuse. As for Lakhwinder, the Department concluded his unresolved substance abuse and mental health issues severely impacted his ability to function and he did not understand the dangers his behavior presented to E.S.

4. *The Jurisdiction/Disposition Hearing*

At the jurisdiction/disposition hearing on May 8, 2019 Lakhwinder entered a waiver of rights and pleaded no contest to the allegations in the petition. Luisa's counsel asked the court to dismiss the petition as to Luisa, arguing there was no evidence her mental health had interfered with her ability to care for E.S. Luisa had not allowed Lakhwinder back into the home after the court's order in her older children's case, and there had been no new concerns raised since E.S.'s birth. E.S.'s counsel requested the court sustain the petition, arguing Luisa's mental health issues likely contributed to her lapse in judgment in allowing Lakhwinder to live in the home with her older children despite his erratic behavior. In requesting the court sustain the petition, the Department expressed concern Luisa had refused to sign a waiver allowing it to have direct contact with her therapist; as a result, her current diagnosis was unknown.

8

The court amended the petition by interlineation to include a statement Lakhwinder had been involuntary hospitalized on at least one occasion and sustained the petition as amended. The court explained it believed Luisa had placed the older children at risk by allowing Lakhwinder to live in the home and her willingness to do so was "indicative of her mental illness."[4]

Proceeding immediately to disposition, the court declared E.S. a dependent of the court, removed her from Lakhwinder's custody and released her to Luisa. Family maintenance services were ordered for Luisa and enhancement services for Lawkwinder. Luisa's case plan included parenting classes, counseling and a psychiatric evaluation.

5. *The Status Review Hearing and Termination of Jurisdiction*

In a report filed October 18, 2019 the Department stated E.S. was doing well in her mother's care and the baby had a strong bond with her mother and half-siblings. Luisa had completed a parenting class, and the social worker observed Luisa was proud of completing the class and enjoyed demonstrating and discussing what she had learned.

Luisa continued to attend weekly therapy sessions. The therapist, who was in regular contact with the social worker, reported Luisa had made progress toward her treatment goals. However, Luisa had yet to complete a psychiatric evaluation. The therapist reported Luisa did not qualify for an evaluation through the organization where she took classes because of her immigration status. According to a last minute information filed

---

[4]     During the same hearing the juvenile court sustained the petition as to the older children and released them to Luisa.

November 5, 2019, Luisa had identified a psychiatrist and scheduled an assessment for early November. Luisa had refused to grant the Department access to her mental health records because she felt it would be unfair to judge her current mental state by her behavior during prior stressful episodes.

The Department reported Luisa had made progress toward completing her case plan. The social worker stated she "has observed mother to always put her children's needs as her priority. Mother has demonstrated the skills and knowledge that she has acquired through her Court ordered programs, and as such understands that [Lakhwinder's] presence in the home as well as his unstable mental health might compromise the safety of the children. . . . Although Mother cares for [Lakhwinder], during this period of review, mother has placed more emphasis on her children's safety and wellbeing."

Lakhwinder made minimal progress on his case plan during this period. For the most part he stayed away from Luisa's home, but he did show up on one occasion while under the influence of methamphetamine. Luisa was not home at the time, but she immediately informed the Department of Lakhwinder's behavior when she found out. Lakhwinder repeatedly tested positive for methamphetamine and was again briefly hospitalized for psychiatric reasons. However, in early October 2019 Lakhwinder enrolled in a 90-day inpatient psychiatric and drug treatment program. As of a last minute information filed December 26, 2019, Lakhwinder was still enrolled in the program and was scheduled to move to a sober living facility in January 2020.

In the October 2019 status report the Department recommended continued jurisdiction and services for both

parents. However, in the December 26, 2019 last minute information, the Department recommended termination of jurisdiction with an order granting sole legal and physical custody to Luisa with monitored visitation for Lakhwinder.[5] The Department concluded Lakhwinder was still early in his recovery and was not yet stable enough to care for an infant.

The contested review hearing was held on January 6, 2020. E.S.'s counsel joined in the Department's recommendation, noting an individual from her office had visited the home and observed Luisa was appropriate with E.S. and the baby was well cared for. Lakhwinder's counsel argued against terminating jurisdiction because Luisa had not complied with "some mental health components" of her case plan and, "without any verification that the mother has actually engaged in her mental health treatments," the Department could not confirm the conditions warranting initial jurisdiction no longer existed.

The juvenile court terminated jurisdiction over E.S. and granted sole physical and legal custody to Luisa. Lakhwinder was awarded monitored visitation for a minimum of three hours per week.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 364, subdivision (a), requires the juvenile court to schedule a review hearing at least every six months for a dependent child who has not been removed from the physical custody of his or her parent or guardian. At the section 364 review hearing dependency jurisdiction must be terminated

---

[5] Jurisdiction over Luisa's older children was terminated on November 6, 2019 with sole legal and physical custody to Luisa.

unless the conditions that created the need for supervision still exist or are likely to exist if supervision is discontinued:  "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary.  The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."  (§ 364, subd. (c); see *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290-291 [section 364, subdivision (c), establishes a "statutory presumption in favor of terminating jurisdiction and returning the children to the parents' care without court supervision"].)  "While the statute speaks in terms of the social worker or department establishing the basis for the continuation of dependency jurisdiction, the first sentence of section 364(c) makes clear that the parent, the guardian, or the child may offer evidence on that question." (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1155.)  Accordingly, the party opposing termination of dependency jurisdiction bears the burden of establishing by a preponderance of the evidence that conditions justifying initial assumption of dependency jurisdiction either still existed or were likely to exist if supervision were withdrawn.  (*Id.* at pp. 1147, 1155-1156.)  "The juvenile court makes this determination based on the totality of the evidence before it."  (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.)

Generally, we review the juvenile court's decision whether to terminate jurisdiction for substantial evidence.  (*In re Aurora P., supra,* 241 Cal.App.4th at p. 1156; *In re N.S.* (2002)

12

97 Cal.App.4th 167, 172.) Under this standard "'[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384; accord, *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

When the party opposing termination of jurisdiction has failed to carry its burden of proof, however, the question for a reviewing court is "'whether the evidence compels a finding in favor of the appellant[s] as a matter of law.'" (*In re Aurora P.*, *supra*, 241 Cal.App.4th at p. 1163.) Specifically, the question becomes whether the appellant's "evidence 'was . . . "uncontradicted and unimpeached" and . . . "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Id.* at p. 1164.)

> 2. *The Evidence Does Not Compel Continued Dependency Jurisdiction as a Matter of Law*

Lakhwinder argues jurisdiction should not have been terminated because Luisa had not obtained a mental health assessment as required by her case plan.[6] However, Lakhwinder

---

[6] On appeal Lakhwinder also argues the juvenile court should have retained jurisdiction because Luisa's oldest daughter had recently moved out of the home to attend college and her absence would deprive E.S. of the "oversight" of her "strongest advocate." In addition, Lakhwinder contends an additional six months of services would have allowed him to further his sobriety and his chances of reunification with E.S. These arguments are forfeited because they were not raised in the juvenile court. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [forfeiture doctrine

13

failed to present any evidence, let alone conclusive evidence, the lack of a mental health assessment created a substantial risk E.S. would be neglected or suffer serious physical harm such that the grounds for the court's initial assumption of dependency jurisdiction still existed.

Luisa had been attending therapy for 18 months, and neither her therapist nor the Department had expressed any concerns regarding her ability to appropriately care for E.S. Throughout the case the Department's primary concern regarding Luisa's mental health was her poor judgment in allowing Lakhwinder to have contact with her children. By the section 364 hearing, the Department had concluded this risk was mitigated because Luisa had gained insight into the risks posed by Lakhwinder's behavior and Luisa had adamantly expressed her understanding her children's safety must be her priority.

While Lakhwinder is correct there was no evidence Luisa had undergone a psychiatric evaluation as ordered by the court, there was ample evidence of her compliance with the remainder of her case plan; and she had made arrangements for a psychiatric evaluation prior to the review hearing. In the absence of a specific potential risk to E.S., Luisa's mental health issues alone were not sufficient to overcome the statutory presumption in favor of terminating jurisdiction. (See *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 563 ["mental illness is not itself a justification for exercising dependency jurisdiction over a child"]; *In re James R.* (2009) 176 Cal.App.4th 129, 136 [speculative future harm based on parent's mental health insufficient to support finding minor at substantial risk of future

applies in dependency proceedings]; *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.)

14

harm].)  On this record, the evidence does not compel a finding the court should have retained dependency jurisdiction.

## DISPOSITION

The order terminating jurisdiction is affirmed.


                                                    PERLUSS, P. J.


We concur:



FEUER, J.



RICHARDSON, J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.