Filed 9/7/21  In re K.B. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | B302139 (Los Angeles County Super. Ct. No. 18CCJP02245A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. NATASHA G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court for Los Angeles County, Emma Castro, Commissioner/Referee.  Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

Natasha G. (mother) appeals from an exit order of the juvenile court terminating dependency jurisdiction over her son, K.B., awarding full legal and physical custody of K.B. to his father, Jermaine B. (father), and granting mother unmonitored visitation. Mother contends the juvenile court (1) abused its discretion by granting father sole legal and physical custody of K.B.; (2) abused its discretion by making mother's right to unmonitored visitation contingent on her continuing to participate in conjoint counseling with K.B., where father, K.B., and the therapist have the power to preclude that counseling; and (3) violated mother's due process rights by admitting evidence and attaching it to the exit order without holding an evidentiary hearing to give mother an opportunity to be heard.

We conclude that the juvenile court did not abuse its discretion in granting father sole legal and physical custody in light of its findings, supported by substantial evidence, that mother failed to adequately comply with the court-ordered case plan to address the issues that led to K.B.'s removal from her care. We also find that mother is mistaken in her understanding of the court's order regarding visitation, in that mother's right to unmonitored visitation was contingent upon the court's receipt of a letter indicating that conjoint counseling would be continued, and that letter was received. Finally, we conclude that any error arising from the court's failure to hold an evidentiary hearing was harmless. Accordingly, we affirm the juvenile court's order.

## BACKGROUND

K.B. was born in July 2009. He initially was detained from mother's and father's care in April 2018, and the Los Angeles Department of Children and Family Services (the Department) filed a petition under Welfare and Institutions Code[1] section 300. The juvenile court sustained the petition as to mother in June 2018 and ordered K.B. removed from mother's care. The sustained petition alleged two claims: (1) while K.B. was a passenger in her car, mother engaged in a verbal and violent altercation with father, drove her car into father's car, and drove recklessly; and (2) mother physically abused K.B. by striking him with her hands, belts, shoes, and a cell phone.

Over the next year, mother completed a parenting program and 20 weeks of an anger management course, and, for a short time, she participated in individual and conjoint counseling with K.B. as ordered by the juvenile court. In mid-June 2019, a year after the petition was sustained, the court released K.B. to mother; although his primary residence was with father, K.B. stayed with mother from Friday through Monday mornings.

As soon as the juvenile court released K.B. to her in June 2019, mother ended both her individual and her conjoint therapy, even though both her individual therapist and the conjoint therapist believed that more therapy was necessary to address the issues that brought mother and K.B. to the attention of the Department. Mother also

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

3

refused to cooperate with the Department and would not agree to participate in "Wraparound" services.

After several incidents in which mother yelled at and was verbally abusive to K.B., the Department filed a subsequent petition under section 342 on July 29, 2019, and again detained K.B. from mother's care. On August 8, 2019, the Department filed an amended section 342 petition as well as a supplemental petition for a more restrictive placement under section 387. The amended section 342 petition alleged three claims based upon the incidents that took place in June and July 2019 and led to the latest detention; the section 387 petition alleged a single claim based upon mother's refusal to regularly participate in court-ordered individual and conjoint counseling, her failure to take K.B. to Wraparound services, and her failure to regularly take K.B. to his individual counseling appointments.

On August 16, 2019, the Department submitted a last minute information for the court (LMI) in advance of a progress hearing. The Department reported that K.B.'s therapist, Rebecca Cook, told the dependency investigator that she did not believe visits for mother were appropriate at that time based upon the history of contacts between K.B. and mother. The Department requested that the juvenile court order that mother have monitored visits only in a therapeutic setting pending approval by Cook. The LMI attached letters from Cook and the Wraparound facilitator for the family.

The Wraparound facilitator reported that K.B. and father were consistently engaging in Wraparound services, and that the Wraparound team was meeting with them once a week. The facilitator

4

also reported that K.B. told her that he does not feel comfortable speaking freely to mother. According to father, K.B. recently had become hyper vigilant about mother's whereabouts and was concerned that she knew where they lived. Finally, the facilitator noted that she had observed the effects of K.B.'s distress after spending time with mother.

Cook reported that K.B. had made consistent progress toward his goals of decreasing his symptoms of PTSD and increasing his positive communication. She noted that father was consistently working with the wraparound program and encouraging K.B.'s participation in individual therapy. She indicated that she had had no contact with mother because, Cook had been told, mother was not open to participating in wraparound services. Finally, Cook reported that K.B. said that he felt safe and happy living with father and did not feel comfortable seeing mother.

At the progress hearing held on August 16, 2019, the juvenile court ordered that mother's visits were to be monitored and could only take place in a therapeutic setting. The court ordered the Department to consult with Cook to determine if she would monitor those visits.

The social worker spoke to Cook on August 29, 2019. Cook reported that although K.B. no longer was saying he was not ready to visit with mother, he would shut down whenever Cook initiated a conversation regarding her; she indicated that she was continuing to work with him to help him open up and be more comfortable regarding mother. Cook also stated that she was willing to monitor mother's

5

visits with K.B. in a therapeutic setting and to provide conjoint counseling if the court ordered it.

Mother had resumed her individual counseling on August 20, 2019. However, on September 16, 2019, her therapist contacted the Department to inform it that he decided to discontinue seeing mother effective immediately. He suggested that mother seek counseling services elsewhere.

Beginning on September 24, 2019 and on several subsequent days, the juvenile court held hearings to adjudicate the amended section 342 petition and the section 387 petition, and to conduct the section 364 review. The court began with the adjudication of the section 387 petition. On the first day of the hearings, the court heard testimony from Cook. The examination of Cook could not be completed, and the matter was continued. Before adjourning, however, and based upon the court's questioning of Cook, the court reaffirmed its prior order for conjoint counseling services for mother and K.B., and ordered mother to make contact with the wraparound services agency and Cook to arrange for that counseling. The court also informed mother that the conjoint counseling could not take place unless she signed a consent to release information form to allow the Department to speak with the therapist about the counseling sessions.

Although mother told the court she would sign the consent form, when she did so she altered it to allow the therapist to talk only to the court, asserting that was all the court had required. Upon being informed of mother's actions, the court issued a written order specifically requiring mother to sign a standard release of information

form allowing the Department to speak to the therapist. Mother complied with that order, and two conjoint sessions were held with Cook before the next hearing on the adjudication of the petitions and section 364 review. In advance of that hearing, Cook reported on those conjoint session. She stated that the first conjoint session went well, but after the second session she believed it was not a good idea for mother and K.B. to be in conjoint therapy until mother was enrolled in individual therapy and was able to acknowledge her past actions, including her physical abuse of her son.

At the next substantive hearing, held on November 1, 2019, Cook completed her testimony, and the court put the matter over for completion of the adjudication and disposition of the section 387 petition and the remaining matters. At the continued hearing, held on November 7, 2019, the court heard testimony from mother (called by counsel for K.B.). Mother testified that she started individual counseling with a new therapist, although she could not remember when she started; she testified that she had seen him twice in October. She admitted that she did not tell the social worker assigned to K.B.'s case about the new therapist. She also admitted that she did not sign a consent to release of information form to allow the therapist to share information with the Department, although she stated she was willing to sign one. When asked by the court if she had provided the therapist with any of the reports prepared by the social workers on the case, she testified that she had not, and that the therapist could understand the issues she is dealing with in the court case through her.

After admitting into evidence the various reports that had been filed in the case (proffered by the Department), as well as several exhibits proffered by mother, and hearing arguments from counsel regarding the section 387 petition, the juvenile court found by a preponderance of the evidence that the previous disposition had not been effective in the protection of K.B. The court noted that mother was not in compliance with the individual counseling order the court had made 17 months prior and she had attended very few conjoint counseling sessions. Therefore, the court found the single count alleged in the section 387 petition to be true.

The court then moved on to the adjudication of the section 342 petition. Both the Department and mother sought to admit the same evidence that had been admitted for the adjudication of the section 387 petition. The court admitted the Department's evidence, but declined to admit mother's evidence because it was not relevant to the limited issues on the section 342 petition. No other evidence was offered. Over the Department's objection, the court dismissed the section 342 petition in the interest of justice, finding that the incident alleged in that petition was an isolated one.

After hearing arguments on the disposition of the section 387 petition, the court read from an Evidence Code section 730 report from a psychological evaluation of K.B. and mother that had been conducted by Dr. Monica Kelson early on in the case. Dr. Kelson reported that K.B. feels "betrayed by his mother, who physically abused him," and that he "walks on eggshells [and] is afraid to express his needs." Dr. Kelson also reported that mother "is an extremely defensive individual

. . . who has had high expectations for herself, as well as her son. . . . However, unfortunately, there is a fine line between having high expectations of children and crossing a boundary where children feel responsible for pleasing their parent[s].  High expectations create a tense parent-child relationship."  The court stated that, based upon its observations since the beginning of the case, it believed that "[i]n terms of [mother], . . . it's her way or the highway."  Based on those observations, the court concluded that mother and father would not be able to co-parent K.B.  The court noted that although it had observed warmth and affection between mother and K.B., it also had received numerous reports that mother acts inappropriately whenever K.B. does or says something that mother disapproves of.  Therefore, the court removed custody from mother and made a home of parent-father order.

The court then moved to the section 364 review.  Based upon the evidence submitted and arguments heard on the section 387 petition, the court found that the conditions that originally justified jurisdiction no longer existed and were not likely to exist if the court terminated jurisdiction.  Therefore, the court announced it would terminate jurisdiction with a juvenile court custody order (also referred to as an exit order) granting father sole legal and physical custody, and granting mother unmonitored visits once a week.  The court conditioned mother's visitation order on (1) mother providing a letter from her therapist confirming that mother was participating in individual counseling and (2) the wraparound team providing a letter that conjoint counseling would continue; the court ordered that the conjoint counseling should continue for a 30-day period after the court terminated jurisdiction, and

9

that the wraparound team should provide the recommendations regarding that counseling. The court reiterated that its receipt of those two letters was a condition precedent to mother being granted unmonitored visits.

The court ordered mother's counsel to file the letter from mother's therapist on November 20, 2019. It also ordered the Department to follow up with Cook to make sure that K.B. would be receiving counseling services and that conjoint counseling would be put in place for at least 30 days after the court terminated jurisdiction on November 22. Finally, the court ordered father's counsel to prepare the juvenile court custody order, to be received by the court on November 22, 2019, on which date the court would terminate jurisdiction and the custody order would be filed in family court.

On November 20, 2019, mother filed a letter from her therapist, who stated that mother began treatment on September 23, 2019, and diligently attended sessions every other week. The Department filed an LMI the following day. In the LMI, the Department reported on a phone call the social worker had received from K.B.'s therapist, Rebecca Cook, the previous day, and attached a letter from Cook dated November 19, 2019.

According to the social worker, Cook said that when she picked up K.B. for his conjoint counseling session with mother on November 14, 2019, K.B. was visibly shaken, began crying, and said that he did not want to have the session. Cook persuaded K.B. to ride with her to the session so she could tell mother that the session was cancelled. Although Cook planned to leave K.B. in the car while she spoke with

mother, he got out of the car. When Cook told mother that the session was cancelled, mother got upset and whispered something in K.B.'s ear, which made him even more upset. Cook told the social worker that father had told her that K.B. had recently called mother, but ended the call after five minutes, visibly distraught and upset; father and Cook believe that whatever happened during that phone call was the reason K.B. did not want to meet with mother.

Finally, the LMI stated that Cook told the social worker that she did not think continued conjoint sessions were appropriate given what she observed. The November 19, 2019 letter from Cook that was attached to the LMI, however, did not say that conjoint sessions should not be continued. Instead, Cook wrote that K.B. told both Cook and father that he did not want to participate in conjoint therapy; Cook stated that she would continue to provide individual therapy to K.B. and explore his hesitation to participate in conjoint therapy.

On November 22, 2019, the juvenile court held a proceeding, without the presence of the parties or their attorneys, for receipt of the juvenile court custody order. At that proceeding, the court stated it had received the custody order from father's counsel, as well as the letter from mother's therapist and the LMI with the attached letter from Cook at the wraparound outpatient program. The court announced that those documents would be attached to the custody order, "as these were requested conditions for the court to terminate jurisdiction and grant the mother unmonitored visitation." The court then stated: "At this

11

time, the stay is lifted, and jurisdiction is now terminated."[2]  The custody order, which the court signed and filed that day, states in relevant part:  "Unmonitored visits for the Mother once per week. . . . Visits to take place on the condition of letter from [mother's therapist] plus wrap around that conjoint will continue."

Mother, representing herself, filed a notice of appeal from the November 7, 2019 order sustaining the section 387 petition.  Her appellate counsel subsequently filed a request in this court to correct the notice of appeal and construe it as encompassing review of the section 364 review hearing and the November 22, 2019 juvenile custody order hearing.  We granted that request.

## DISCUSSION

A.    *Grant of Sole Legal and Physical Custody to Father*

Mother contends the juvenile court abused its discretion by granting sole legal and physical custody of K.B. to father.  She asserts that the evidence demonstrated that she was fully capable of making decisions regarding K.B.'s health, education, and welfare, and therefore giving father sole legal custody was not in K.B.'s best interest.  We find no abuse of discretion.

---

[2]    The minute order from the November 22, 2019 proceeding states, in relevant part:  "The Court is in receipt of letters from mother's therapist and an LMI w/attachments which are both attached to the Juvenile Custody Order as requested conditions for termination of jurisdiction and mother to have unmonitored visits as reflected in the body of the order.  [¶]  Juvenile Custody Order is received, signed and filed this date.  Stay is lifted and jurisdiction is terminated.  [¶]  Jurisdiction is Terminated for Minor.  Minor has been released to father."

"[W]hen a court has made a custody determination in a dependency proceeding, "'a reviewing court will not disturb that decision unless the [juvenile] court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" . . . 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the [juvenile] court.'" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

In arguing that the juvenile court abused its discretion, mother focuses only on evidence showing that mother had made various appropriate decisions regarding K.B.'s medical and educational needs, and ignores the evidence of her decisions that were harmful to K.B., such as her decision to terminate his individual and conjoint therapy once he was returned to her care (which decision led to the filing of the § 387 petition). She also ignores the evidence that her emotional abuse of K.B. caused him severe emotional distress, as recounted in several of the reports filed by the Department, and that she had failed to fully comply with the court-ordered case plan designed to address the issues that led to the sustained section 300 petition.

Finally, mother ignores the primary reason the juvenile court articulated for giving sole physical and legal custody to father, and the evidence supporting that reason: the court's determination that it would be impossible for mother and father to co-parent K.B. due to mother's "her way or the highway" attitude. In fact, the record is

13

replete with instances of mother insisting on doing things her way, despite court orders to the contrary: she refused to participate in wraparound services, she refused to give her consent to allow her therapist to provide information to the Department, and she refused to provide the reports that had been filed in the case to her therapist, instead insisting that she would provide the therapist with the information she deemed necessary for treatment. In light of this evidence, it cannot be said that the court's decision to give sole physical and legal custody to father was """arbitrary, capricious, or patently absurd."""" (*In re Stephanie M., supra,* 7 Cal.4th at p. 318.) Accordingly, we conclude the juvenile court's custody order was not an abuse of discretion.

B.     *Mother's Right to Unmonitored Visitation*

Mother argues that, because father, K.B., and K.B.'s therapist have control over whether K.B. participates in conjoint counseling, the juvenile court abused its discretion by making mother's right to unmonitored visitation contingent on her participating conjoint counseling with K.B. Mother misreads the court's order.

While the language of the written juvenile custody order is not as precise as it should be—"Unmonitored visits for the Mother once per week. . . . Visits to take place on the condition of letter from [mother's therapist] plus wrap around that conjoint will continue."—the record is clear that the court made mother's right to unmonitored visitation contingent on the court's receipt of letters from mother's therapist confirming mother's participation in individual counseling and from the

wraparound team confirming that conjoint counseling would continue after the court terminated jurisdiction. The record also is clear that the court found that that contingency had been satisfied when, at the hearing on November 22, 2019, the court stated that the letters it received would be attached to the custody order, "as these were requested conditions for the court to terminate jurisdiction *and grant the mother unmonitored visitation*." (Italics added.) Therefore, the order granting mother unmonitored visitation is in effect, and will remain in effect, unless or until it is modified by a family law court. (See *In re Chantal S.* (1996) 13 Cal.4th 196, 203 ["'When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court'"].) Therefore, mother's contention is moot.

C.   *Admission of Evidence Without a Hearing*

Mother contends the juvenile court denied her due process because in making its exit order it considered the LMI and letter from Cook but did not give mother notice of the content of those items and an opportunity to be heard. In her appellant's opening brief, she argues this denial of due process was not harmless because she was denied the opportunity to present evidence that may have contradicted or elaborated on the contents of the LMI and/or letter, relying upon *In re Armando L.* (2016) 1 Cal.App.5th 606. In her reply brief, mother argues that the denial of due process was prejudicial because the information

15

in the LMI and letter, which were attached to the juvenile court's exit order, would be considered by the family court and could negatively impact her if she sought to raise any issues regarding custody in family court.

We conclude that any error in the juvenile court's consideration of the LMI and letter without giving mother an opportunity to be heard was harmless. First, as the Department correctly observes, mother suffered no prejudice from the juvenile court's consideration of those documents because the only issue at that time was whether mother's visitation would be monitored or unmonitored, and the court ordered that it be unmonitored. Second, we fail to see how the fact that the documents could be considered by the family court if any issue were brought before it would cause mother prejudice. If either mother or father requests a change in the custody or visitation order, that request would have to be based upon the circumstances that exist at the time such a change is sought. The information in the LMI or letter regarding a past event would not be relevant to that request. But even if the family court considered it, the court would also be aware that after receiving that information, the juvenile court ordered that mother's visitation be unmonitored. In other words, the juvenile court concluded that the information was insufficient to require monitored visitation. Thus, the fact that the family court has access to the information in the LMI and letter does not prejudice mother in any way.

//

//

16

## DISPOSITION

The juvenile custody order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


COLLINS, J.