Filed 1/23/23 In re B.G. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re B.G. et al., Persons Coming Under the Juvenile Court Law. | B319831 (Los Angeles County Super. Ct. No. 20CCJP06180A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Nancy A. Ramirez, Judge. Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, L.C. (mother) appeals the juvenile court's final custody order. Mother challenges the juvenile court's decision to terminate jurisdiction and award R.G. (father) sole physical custody of their two children. In particular, mother argues the juvenile court abused its discretion because the final custody order was not in the children's best interests. As discussed below, we find no abuse of discretion and affirm.

## BACKGROUND

### 1. The Family

Mother and father have two children together, B.G. (daughter) and A.G. (son). At the time the underlying proceedings began, daughter was seven years old and son was six years old. Mother and father do not live together and are no longer in a relationship. Father has four older children with other women. Mother's boyfriend, A.M. (boyfriend), sometimes stayed at mother's home with her and the children. Mother and her boyfriend had been dating since 2016. Mother's boyfriend has three children, all of whom have been removed from his care because one of them was hospitalized after ingesting an illicit substance while in his care. Mother, father, and mother's boyfriend all have histories of substance abuse, including methamphetamine use.

2

While the underlying proceedings were pending, mother became pregnant with and gave birth to a daughter. Mother's boyfriend is the father of that child.

2.      **Previous Referrals and Criminal Histories**

In May 2018, prior to the instant case, a referral was made to the Los Angeles County Department of Children and Family Services (Department), alleging father mistreated the children and used drugs. During the Department's investigation of the referral, father admitted using methamphetamine for 10 years. The Department closed the referral because mother and father did not live together and mother was willing to protect the children.

In December 2018, a referral was made to the Department alleging a paternal uncle sexually abused daughter. The referral was closed because it appeared to stem from a conflict within mother's family, there were no signs of abuse, and no opportunity for the alleged abuse to have taken place. During that investigation, mother and father also both denied substance abuse.

A couple of months later, in February 2019, another referral was made, this time alleging mother left the children unattended at home and they had been found wandering around their apartment building at night looking for mother. The Department closed the referral because no evidence of neglect was found. Mother and father appeared to coparent their children well, and father tested negative for all substances besides marijuana.

In November 2019, mother and her boyfriend were arrested for burglary. Mother admitted to, among other things, breaking into vehicles, using a stolen credit card, and forging and cashing

3

stolen checks. Mother was placed on formal probation and was considered " 'minimal risk.' " Later, in 2020, a bench warrant was issued for mother after she failed to appear for a court hearing regarding citations for possession of drug paraphernalia and driving with a suspended license.

Father had a more extensive criminal history dating back to 2002, which included domestic violence, carrying concealed weapons, and theft. Similarly, mother's boyfriend had a criminal history that included weapons and drug charges, domestic violence, and theft. Mother's boyfriend had served time in jail for some of his convictions.

### 3.    Events Preceding Instant Petition

In September 2020, the Department received a referral alleging, among other things, mother left the children unattended, yelled and cursed at the children, sold drugs at home, and fought often with her boyfriend. Although anonymous, the referral appeared to be made by a neighbor with whom mother had ongoing conflicts. A social worker spoke with mother, father, and the children. Although there were no obvious concerns and mother and father both denied drug use other than occasional marijuana use, a few days later mother tested positive for methamphetamine, amphetamine, marijuana, and Xanax. Her boyfriend also tested positive for methamphetamine, amphetamine, and marijuana. Father tested negative. Mother adamantly denied using methamphetamine and said she did not know if her boyfriend did. Mother told the social worker she broke up with her boyfriend after their positive drug tests. Mother also denied having a criminal history. Father denied substance abuse other than an earlier 10-year addiction to

4

alcohol, current recreational use of marijuana, and past use of methamphetamine two years earlier.

**4.     Petition and Detention**

In November 2020, after having already received a court order for removal of the children from mother's care, the Department filed a two-count Welfare and Institutions Code section 300 petition on behalf of the children (petition).[1]  The petition alleged mother both abused drugs which affected her ability to care for her children and created a dangerous home environment by allowing her boyfriend unlimited access to the children.  The petition also alleged father failed to protect the children from mother.  At the detention hearing held a few days later, the juvenile court ordered the children removed from mother's custody and care and released to father under Department supervision.  The court also issued a "no contact order" between the children and mother's boyfriend.

**5.     Continued Investigation and Amended Petition**

While in the care of father, the children appeared to be doing well.  They visited with mother often.  The children indicated they preferred to live with both mother and father.

Following the detention hearing, mother continued to deny ever using methamphetamine.  She said she had a prescription for Xanax, which she took as needed for panic attacks.  Mother did not believe her family had "any issues."

Also after the detention hearing, father tested positive for methamphetamine and marijuana.  Father told a Department social worker he had "been sober for the last 2-3 weeks" but was "not gonna deny I'm using meth."  He said he used to use

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

5

methamphetamine with mother but did not know if she currently was using the drug. Father noted mother had a prescription for Xanax. Father did not believe the children were in danger while in mother's care. At one point he said mother's boyfriend was "a good guy" who loved the children but, on a different occasion, father stated he believed mother should no longer be involved with boyfriend because he was part of the reason the children were removed from mother. Father was willing to comply with any court orders, including random testing and a drug program.

In early December 2020, father consented to the children's detention from him based on general neglect due to his methamphetamine use. The children were placed with paternal grandmother. The juvenile court subsequently ordered the children detained from father. Within one week of the court's detention order, father enrolled in a drug and alcohol program.

Later that same month, mother was arrested and spent 23 days in jail. Mother told a Department social worker she was arrested because "she violated her parole and had a warrant out for her arrest because she had outstanding tickets."

On December 24, 2020, the Department filed a first amended petition (amended petition). In addition to the original counts, the amended petition also alleged father was a current abuser of amphetamine, methamphetamine, and marijuana, which rendered him incapable of providing care for the children. After the amended petition was filed, the juvenile court dismissed the original petition.

Following the filing of the amended petition and prior to the adjudication hearing, mother had four random drug tests scheduled. She tested positive for marijuana metabolites once and missed the other three tests. Within the same time frame,

father tested positive for marijuana twice, tested negative five times, and missed one test. Father also continued in his drug treatment program, participating in educational groups, attending individual counseling, and eventually enrolling in the outpatient program.

**6.     Adjudication and Disposition**

The juvenile court held a combined adjudication and disposition hearing on February 22, 2021. At the hearing, other than deleting reference to mother's prescription medication, the juvenile court sustained the amended petition as pleaded. The court declared the children dependents of the court under section 300, subdivision (b), and removed them from their parents' custody and care

The juvenile court ordered mother to enroll in a full alcohol and drug program with aftercare, submit to weekly drug testing, attend parenting classes, and participate in individual counseling, mental health counseling, and monitoring of her medication. The court ordered father to enroll in a full alcohol and drug program with aftercare, submit to weekly drug testing, attend parenting classes, and participate in individual counseling. The court granted both parents monitored visits with their children. Father also was allowed unmonitored visits within his treatment program facility.

**7.     Reunification Period**

During the reunification period, the children remained placed with their paternal grandmother. The children's therapist told a Department social worker she initially had concerns about mother. The therapist explained that the first time she met the children, "mother was asleep on the front steps, had her head hung low, and was not moving." Mother was also "slobbering"

and "slurring her words." She appeared to be under the influence. Mother told the therapist she had taken a Xanax. Nonetheless, by mid June 2021, the therapist believed everyone was making progress and she did not have the same concerns.

Mother and father visited the children separately and their visits generally went well, although it was reported mother appeared to pay more attention to daughter and sometimes yelled at son. In September and October 2021, mother missed a couple of visits with the children. Mother told a Department social worker she did not want to visit with the children if paternal grandmother was the monitor. In September 2021, father began having unmonitored visits with the children.

### a. Mother

In February 2021, a few days after the adjudication hearing, mother was arrested "for conspiracy to commit crime."[2]

In March 2021, mother enrolled in an outpatient drug program. However, mother was inconsistent with her required drug testing. Between March 12 and August 3, 2021, mother should have tested 17 times for the Department. However, she missed nine of those tests (including the five most recent tests in July and August 2021) and three times she tested positive for methamphetamines and amphetamines. Her most recent positive test was in May 2021. The remaining five tests were negative. Mother also was required to submit to separate drug testing for her outpatient program. Between April 9 and August 11, 2021, mother missed three out of eight tests (including two in August 2021), tested positive once for methamphetamine,

---

[2] The record does not reveal details of this arrest.

amphetamine, and THC, and other than her Xanax prescription, tested negative four times.

In April 2021, mother began individual counseling sessions. In late September 2021, mother's therapist reported mother was " 'very cooperative, compliant, and speaks highly of her children.' "

In late July 2021, mother revealed she was four months pregnant with her third child. Boyfriend was the father. Although mother stated she had not taken drugs while pregnant, her test results indicated otherwise. Mother said her pregnancy was "a blessing for her case, because she does not use drugs during her pregnancies." Although mother had completed her court-ordered parenting courses, the Department did not consider her to be in full compliance with that portion of her case plan because she had used drugs while pregnant.

In late August 2021, due to excessive absences and no shows, mother's drug treatment program put her on a "behavior contract," which meant mother "would be discharged from the program if she continued to miss group sessions or if she was late." After signing the behavior contract, mother had no further problems. From August 18 thru September 23, 2021, mother tested six times, all of which were negative.

### b. Father

In April 2021, father "stepped down" to an outpatient drug program, through which he participated in individual counseling and treatment sessions. In mid August 2021, father completed his outpatient program and transitioned to an aftercare program. Father also consistently attended Narcotics Anonymous meetings three times each week. Father's counselor, case managers, and therapist all reported he was doing very well.

Between February 24 and September 20, 2021, the Department scheduled 28 drug tests for father, all of which were negative. Father also tested for his drug treatment program. Between February 23 and July 2, 2021, father had 19 drug tests there. He missed one test and the remaining 18 tests were negative.

In an August 2021 report, the Department reported father was "in full compliance with Court orders," had stayed sober, and had completed "parenting education, anger management, and relapse prevention courses."

### c. Children placed with father under court supervision.

On October 6, 2021, the juvenile court ordered the children released back to father's custody and care while continuing court supervision. The court also granted mother unmonitored visits in addition to her monitored visits.

The children remained in father's care until the close of this case in April 2022. During that time, the children felt happy and safe in father's care. Father consistently brought them to and from school and to their counseling sessions. The children's therapist had no concerns. Paternal grandmother continued to support father and helped care for the children. Mother's visits with the children went well. The children enjoyed their time with mother, and father had no concerns. Daughter stated she missed mother.

By March 2022, father had been sober for 12 months. His therapist reported father was continuing with individual counseling and was " 'doing fabulous.' " On one occasion, father's therapist saw him interact with his children, which the therapist described as " 'very very beautiful' " and the children were "happy

and playful" with him. The therapist believed the children were "thriving" in father's care. Although father had completed his aftercare treatment requirements, father voluntarily continued to attend an aftercare program "because it is an additional support group for him."

During that same time period, mother completed her parenting education and outpatient drug treatment program, including an aftercare program. She continued with her individual counseling sessions and met with her psychiatrist monthly. Her therapist reported mother was cooperative, making progress toward her goals, and motivated to reunify with her children.

Between September 30, 2021, and March 2, 2022, mother submitted to 20 drug tests. All but one of those tests were negative. Her November 12, 2021 test was positive for ethanol. Mother missed a more recent test on January 11, 2022, but she was sick with COVID-19 at the time. Mother also continued to test for her drug treatment program. All of those tests between August and November 2021, including one taken a few days after she had tested positive for ethanol, were negative for all substances.

A Department social worker spoke with a representative of the laboratory that conducted mother's November 12 drug test. The representative explained ethanol is alcohol and stated the amount in mother's system was "an average amount." The representative also told the social worker she could not "reflect too much on this drug test because there are a lot of factors when it comes to ethanol." Nonetheless, she "confirmed mother was consuming alcohol." Mother denied using alcohol (which she noted had never been her drug of choice) and did not know why

11

she had tested positive for ethanol.  On her own, mother "googled" ethanol and discovered it is present in oranges, which mother explained she had craved and often ate with Tajin during her pregnancy.  Mother also learned ethanol is present in other fruits like grapes.  At mother's request, the social worker researched oranges and ethanol and found "orange, apple, and grape juice contain substantial amounts of ethanol."  The social worker also learned "oranges, apples, and grapes can be marked as ethanol in a drug test."

In January 2022, mother gave birth to her second daughter.  Although the Department acknowledged mother had made progress and there "were no concerns prior to mother's positive ethanol drug test result dated [November 12, 2021]," the Department recommended opening a family maintenance case as to her newborn daughter.  The Department expressed concern based on mother's May 2021 drug test which was positive for methamphetamines and amphetamines as well as her November 2021 test which was positive for ethanol.

8.     **Custody Order and Termination of Jurisdiction**

The juvenile court held a section 364 review hearing on April 6, 2022.  At the hearing, the Department asked the juvenile court to terminate its jurisdiction with a final custody order awarding joint legal custody of the children to mother and father and sole physical custody of the children to father.  The Department was concerned not only with mother's two positive methamphetamine tests the year before, but also with mother's "recent relapse" when she tested positive for ethanol while five months pregnant.  Counsel for the Department argued, "[W]aiting for a parent to be in full compliance with her case plan or gain the necessary insight or to recuperate from the relapse is

12

not a legal basis to continue the 364 [review hearing]." Father agreed with the Department's recommendation to terminate jurisdiction with a custody order granting joint legal custody and sole physical custody to father, stating there was no legal basis to keep the case open.

On the other hand, counsel for mother argued mother was in full compliance with her case plan and asked the court to issue a "home of parents" order. Counsel emphasized mother was "successfully caring for her newborn baby," who the Department recommended, and the court ordered, remain with mother. As to mother's drug use and testing, counsel explained it had been 10 months since mother had "tested positive for any illicit or inherently dangerous substance." Counsel noted mother's positive test for ethanol was four months earlier and she had no further positive or missed tests since then. Alternatively, if the juvenile court declined to issue a "home of parents" order and instead terminated its jurisdiction, mother's counsel asked the court to grant mother "fully unmonitored visits and overnights to be included in the custody order."

Counsel for the children joined in mother's request that the juvenile court make a "home of parents" order and asked that the case remain open for "an additional two to three months." Children's counsel noted, "[M]other has been having consistent, positive visits with these children and no concerns have been reported. . . . In fact, the children have reported the visits are not just appropriate, but that they enjoy the time with mother and enjoy seeing her on weekends and wanting to spend more time with her." Although counsel for the children believed "it is safe and appropriate to return the children to mother at this time," counsel asked the court "to keep the case open for an additional

two to three months to supervise the family and ensure there are no further issues or incidents prior to closing the case." The children's counsel stated, "If the court is not inclined to keep the case open for an additional two to three months, that would be over my objection."

The juvenile court noted father "has completed his case plan. He has been sober for 12 months. He completed parenting, anger management, relapse prevention. He has been testing consistently. All of the service providers who are working with [father] have wonderful things to say about him and the progress that he's made." The court also found mother was "making progress in her case plan. She completed a full drug program with aftercare." The court noted mother had "mixed results with testing. She did test positive for alcohol or ethanol in November of last year while pregnant with a new child [and] she is considered in partial compliance with parenting due to using methamphetamine while she was pregnant with [her youngest]. She is in partial compliance with the psychiatric monitoring of her medication. And she is continuing to participate in individual counseling." The court also referenced a letter from one of mother's service providers, stating mother had "made tremendous progress and has three consecutive months of negative drug tests."

The juvenile court noted, "This is a difficult decision for the court given that mother has made a lot of progress and the report does show three consecutive months of negative drug tests." Nonetheless, because of mother's history of substance abuse, the court found those "three consecutive months of negative tests is not sufficient to order a home of parent mother and father." The court found support in the request by children's counsel for

14

continued court supervision if the children were returned to both mother and father. The court noted, "[T]hat is signaling to the court that mother is not quite ready to be unsupervised." Thus, while recognizing "the tremendous progress that mother has made," the court declined to order the children released to both parents.

The court found the conditions that justified its assumption of jurisdiction no longer existed and were not likely to exist if supervision was withdrawn. Thus, the following day, on April 7, 2022, the juvenile court terminated its jurisdiction and filed a final custody order granting joint legal custody of the children and sole physical custody of the children to father. The court also granted mother monitored and unmonitored visitation.

**9. Appeal**

Mother appealed the juvenile court's final custody order.

## DISCUSSION

**1. Applicable Law**

At a section 364 review hearing, the juvenile court must terminate dependency jurisdiction unless the conditions that created the need for supervision still exist or are likely to exist if supervision is discontinued. "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c); see *In re T.S.* (2020) 52 Cal.App.5th 503, 512–513.) "The juvenile court makes this

15

determination based on the totality of the evidence before it." (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.)

When a juvenile court decides to terminate its jurisdiction over a dependent child, the juvenile court may do what the court did here and enter a final custody order determining custody of and visitation with the minor children. (§ 362.4, subd. (a).) The final custody order—sometimes called an "exit order"—may either be filed in a preexisting family law case involving the family or be the basis for opening such a case. (§ 362.4, subds. (b) & (c); *In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.) The juvenile court's final custody order "shall be a final judgment and shall remain in effect after that jurisdiction is terminated." (§ 302, subd. (d).) The family court may modify the final custody order only upon a finding "that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

"When making a custody determination under section 362.4, 'the court's focus and primary consideration must always be the best interests of the child.' " (*In re T.S., supra,* 52 Cal.App.5th at p. 513.)

## 2.    Standard of Review

We review the juvenile court's decision to terminate jurisdiction and its final custody order for an abuse of discretion. (*In re C.M.* (2019) 38 Cal.App.5th 101, 104; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) We will not disturb such a ruling unless the juvenile court made an " ' " 'arbitrary, capricious, or patently absurd determination.' " ' " (*Bridget A.,* at p. 300.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two

or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

### 3. No Abuse of Discretion

Mother argues the juvenile court abused its discretion because it failed to consider the children's best interests when making its custody order. According to mother, the children's best interests would have been served by placing the children with both parents.

As an initial matter, we note mother does not argue the juvenile court erred in granting physical custody to father. She states the juvenile court "properly placed" the children with him. Thus, it is undisputed father was able to care for the children without court supervision. In addition, although mother relies heavily on the fact counsel for the children below argued for their release to mother, children's counsel clearly objected to releasing the children to mother absent court supervision. It appears even mother's counsel at the April 2022 hearing believed court supervision was necessary if the children were returned to mother's care. The issue for the juvenile court was whether to terminate jurisdiction and grant sole physical custody to father or to continue its jurisdiction with a home of parents order so that the court could supervise mother while the children were in her care.

As the juvenile court recognized, this was "a difficult decision." By the close of the underlying proceedings, it was undisputed mother had made much progress. She had completed most of her case plan (although there was some disagreement as to whether she had fully completed or almost completed certain

17

aspects of her case plan) and had remained sober for close to five months. In addition, it was undisputed the children enjoyed their time with mother and had expressed their desire to live with both her and father. Moreover, at the April 2022 review hearing, counsel for the children advocated for keeping the case open a few more months so that mother could continue to try to reunify with the children.

Despite these facts supporting mother's position, we conclude the court's final custody order was not an abuse of discretion. Mother suffered from a methamphetamine addiction. Although at the time of the April 2022 hearing it had been approximately 11 months since she last tested positive for methamphetamine, mother was pregnant for most of those 11 months. This is significant because mother stated she did not use drugs during her pregnancies (although it appears she did early on in her third pregnancy here). Moreover, during July and August 2021 (approximately eight to nine months before the April 2022 hearing) mother missed seven scheduled drug tests. Thus, mother simply failed to demonstrate a meaningful track record of sobriety by April 2022.

In addition, mother tested positive for ethanol in November 2021, close to five months before the April 2022 hearing. On the one hand, mother argued strenuously that test result likely was due to her craving and eating many oranges while pregnant. On the other hand, the representative at the drug testing laboratory stated the test showed alcohol use. Mother did not explain why none of her other drug tests during her pregnancy—when she was craving and eating oranges—was positive for ethanol. When two or more reasonable inferences can be made, we cannot

18

substitute one inference for that made by the trial court. (*In re Stephanie M., supra,* 7 Cal.4th at pp. 318–319.)

Finally, the record is unclear as to mother's relationship with her boyfriend. Mother's boyfriend was named in the sustained amended petition because his access to the children, which mother allowed, was considered a risk to them. Although early in the underlying proceedings mother stated she was no longer in a relationship with her boyfriend, he fathered her newborn daughter while the proceedings were pending. With no evidence to the contrary, it is reasonable to believe mother's boyfriend would be involved to some extent in their newborn child's life. Mother does not address how she would minimize his contact with the children if they were also in her care.

In light of the above, we conclude the juvenile court's final custody order was not arbitrary, capricious, or patently absurd. Indeed, the order was in the children's best interest because it both ended court supervision of the family and gave physical custody to father, who indisputably was able to care for the children and with whom the children were happy and thriving. We find no abuse of discretion.

## DISPOSITION

The final custody order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.