Filed 5/24/23  In re E.T. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re E.T. et al., Persons Coming Under the Juvenile Court Law. | B319682 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 21CCJP03836A–D) |
| Plaintiff and Respondent, | |
| v. | |
| A.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Tara L. Newman, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

A.G. (Mother) appeals from the juvenile court's order terminating dependency jurisdiction over her four children, granting sole custody to their father, D.T. (Father), and ordering monitored visitation for Mother with the children's consent. Mother contends the juvenile court abused its discretion in making her visitation subject to the children's consent, and in terminating jurisdiction when Father was not cooperating with the visitation orders. We conclude the juvenile court improperly delegated judicial authority over visitation to the children and Father. We accordingly reverse the portion of the juvenile court's order regarding Mother's visitation with the children, and remand for the court to conduct a new hearing on the issue of visitation. In all other respects, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.    Dependency Petition**

Mother and Father are the parents of four minor children: 11-year-old Ed.T., nine-year-old El.T., five-year-old S.T., and three-year-old A.T. In June 2021, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging physical abuse, emotional abuse, and neglect of the children by Mother. At that time, the parents were no longer living together, and the children primarily resided with Mother under an informal custody arrangement. According to the referral, while Ed.T. and El.T. were staying with Father, they disclosed that Mother physically abused them, called them derogatory names and told them to kill themselves, and did not provide for their basic needs. Although Mother was demanding that Ed.T. and El.T. be returned to her, Father was refusing to do so because the children were afraid to be in her care.

In July 2021, a social worker met with Ed.T. and El.T. at Father's home.  Ed.T. reported that Mother would hit him and his siblings with an open hand all over their bodies.  She also choked the children.  When Ed.T. was five or six years old, Mother struck his head with a hot sauce bottle, bit him on the arm, and tried to scratch him with a knife.  When the child was six or seven years old, she hit him with a broom stick and tied him up as a form of discipline.  On one occasion, Mother hit El.T.'s head so hard that it caused her to bleed.  Ed.T. further disclosed that Mother called him names such as "dumb fuck," "stupid," and "crazy," and told him "to jump out the window" and "to kill himself."  In addition, she solely fed the children junk food or old food, and allowed Ed.T. to shower only once a week.  Mother expected Ed.T. to clean and take care of his siblings because she would sleep most days.

In her interview, El.T. disclosed that Mother would slap, hit, punch, bite, and tie up the children.  When El.T. was six or seven years old, Mother hit her with a broom stick on multiple occasions, leaving bruises.  Mother also bit El.T., slapped her in the face with an open hand, and punched her in the face and stomach with a closed fist.  When the child was six years old, Mother got upset and slammed El.T.'s head against the refrigerator, causing significant bleeding.  Mother repeatedly tied up El.T. and Ed.T. with tape, and she choked and hit their younger siblings when they did not listen.  El.T. further reported that Mother called the children names such as "bitch," and told El.T. to "jump out of the window" and "to hit herself with a car."  Mother did not provide the children with healthy food, and did not allow El.T. to bathe on a regular basis.  She also relied on El.T. and Ed.T. to clean and care for their siblings while she slept

throughout the day.  Both El.T. and Ed.T. related that they felt safe with Father, but not with Mother, and that they wanted to remain in Father's home.

The social worker also met with Father and his live-in girlfriend, L.A.  Father typically would have custody of all four children on the weekends.  More recently, however, Mother had agreed to allow both Ed.T. and El.T. to reside at Father's home for a period of time.  While Ed.T. and El.T. were staying with Father and L.A., they disclosed that Mother was physically abusing them.  They further disclosed that Mother called them vulgar names and told them to kill themselves, which caused Ed.T. to have suicidal thoughts.  Both Father and L.A. also reported that Mother was neglecting the children.  She refused to take them for necessary medical and dental care, or to provide Father with the proper paperwork so that he could do so.  She had not enrolled El.T. in school, and she expected Ed.T. to care for his siblings during the day while she slept.  Although Father had not witnessed any abuse firsthand, he did once find Ed.T. and El.T. tied together inside Mother's home.  Mother was no longer allowing Father to have contact with S.T. and A.T., and he was concerned about their safety in her care.  Father stated that he intended to seek full custody of all four children.

After several attempts, the social worker was able to interview Mother.  Mother reported that S.T. and A.T. were currently residing with her.  Ed.T. and El.T. had been out of her care for a few weeks because Father and his girlfriend had offered to take the children to dinner one day and then refused to return them.  Mother denied she physically abused the children, or ever used a broom or any other object to discipline them.  On one occasion, she disciplined Ed.T. by hitting him on the palm of

4

his hand. On another occasion, she grabbed El.T.'s hand and acted like she was going to hit it, but never did. She once tied up Ed.T. and El.T. in a playful manner, but Father walked in and assumed she was punishing the children so he pushed her and called her names. Mother denied she called the children inappropriate names or told them to kill themselves. She further denied she neglected the children, or forced Ed.T. or El.T. to take care of their younger siblings. Mother disclosed that she had a history of mental health issues, and that she and Father had a history of domestic violence. She believed Father was manipulating the children into making up the allegations against her. While S.T. and A.T. were too young to make a statement, the social worker did not observe any signs of abuse or neglect in either of them.

A forensic medical examination was later conducted for each of the four children. El.T. had linear scalp lacerations, a scar on her chin, and a scar on her eyebrow, all of which she attributed to physical abuse by Mother. El.T. also had linear markings on both sides of her neck, which she reported were the result of self-inflicted wounds after Mother told her to kill herself. Ed.T. had a cluster of linear markings on his thigh, linear markings on his forearm, and scars on his scalp and head, which he claimed were inflicted by Mother. Ed.T. also disclosed that he had suicidal thoughts in the past because Mother had told him to kill himself. The doctor who performed the exams noted that there were no external findings of acute physical abuse for the two youngest children, S.T. and A.T., but that the absence of such findings did not exclude prior abuse. The doctor further stated, that based on exams of El.T. and Ed.T. and the information that

they provided, there were significant concerns about the safety of all four children if left in Mother's care.

In August 2021, the social worker conducted follow-up interviews with Ed.T. and El.T.  Both children stated that they were doing well in Father's home, and that they did not wish to see or talk to Mother.  On August 13, 2021, DCFS removed S.T. and A.T. from Mother's home and placed them with Father.  When Mother asked about visitation with the children, the social worker responded that DCFS would try to arrange a visit, but would respect the children's wishes if they did not want to see her.

On August 17, 2021, DCFS filed a dependency petition on behalf of the children under Welfare and Institutions Code[1] section 300.  The petition alleged that all four children were at substantial risk of serious physical harm under section 300, subdivisions (a), (b), and (j), based on Mother's physical abuse of each of them.  It further alleged that Ed.T. and El.T. were at substantial risk of serious emotional damage under section 300, subdivision (c), based on Mother's emotional abuse of them.  At a detention hearing held on August 20, 2021, the juvenile court detained the children from Mother and released them to Father under DCFS's supervision.  Mother was granted weekly monitored visitation with the children in a therapeutic setting.

## II.    Jurisdictional and Dispositional Hearing

DCFS conducted additional interviews with the family for its jurisdictional and dispositional report.  In their respective interviews with the social worker, Ed.T. and El.T. confirmed

---

[1]     Unless otherwise stated, all further statutory references are to the Welfare and Institutions Code.

their prior statements regarding severe physical and emotional abuse by Mother. According to both children, Mother hit them with an open hand, a closed fist, and a broom stick on a regular basis. She also bit the children and tied them up with tape as a form of discipline. On one occasion, she hit Ed.T.'s head with a glass bottle and slammed El.T.'s head against the refrigerator. She physically abused S.T. and A.T. by choking them, hitting them with an open hand, and pulling their hair and ears. In addition, Mother emotionally abused Ed.T. and El.T. by cursing at the children and telling them that she wished they were dead and that they should kill themselves. This led to Ed.T. contemplating suicide on many occasions, and to El.T. once attempting to stab herself with a knife. The social worker noted that both Ed.T. and El.T. provided prompt and detailed answers throughout the interview and did not appear to be coached.

In her interview with the social worker, Mother continued to deny the physical and emotional abuse allegations. She also questioned how she could have inflicted such extreme acts of physical abuse on Ed.T. and El.T. without the children's doctor or school ever noticing. According to Mother, Ed.T. had a history of suicidal thoughts and behavior because Father had abandoned the family. Mother reported that the marks and scars on Ed.T.'s body were self-inflicted, and that the ones on El.T.'s body were the result of accidental injuries on the playground or while in Father's care. Mother denied that she called the children names or talked to them in a degrading manner, and she claimed that they learned vulgar language at Father's home. She believed the children were being coached into making up the allegations because Ed.T. wanted Father to love and accept him, and El.T. wanted to be with Ed.T. and was willing to lie for him. In their

respective interviews, both Father and his girlfriend confirmed that they had never witnessed Mother abusing the children, but that Ed.T. and El.T. recently had disclosed the abuse to them.

Although the juvenile court had ordered monitored visits between Mother and the children, the visitation plan was still pending because DCFS had not secured a therapeutic setting for the visits. Additionally, both Ed.T. and El.T. were refusing to participate in any visits because they were fearful of Mother and did not want to be in her presence. Both children also indicated that they felt safe in Father's care and wished to stay with him indefinitely. DCFS recommended the juvenile court assume jurisdiction over all four children and order that they remain in Father's home with enhancement services provided to Mother.

On October 6, 2021, the juvenile court held the jurisdictional and dispositional hearing. The court sustained the petition as pled under section 300, subdivisions (a), (b), (c), and (j), and declared each of the children a dependent of the court. The court removed the children from Mother, released them to Father, and ordered family maintenance services for Father and enhancement services for Mother. Mother's case plan included anger management, parenting education, individual counseling to address case issues, and conjoint counseling with the children if deemed appropriate. Mother was granted monitored visitation with the children once per week, but the visits with Ed.T. and El.T. were subject to the children's consent.

## III. Six-Month Review Hearing

In its March 2022 status review report, DCFS stated that the children remained placed in Father's home. The children were safe and happy in Father's care, and he was continuing to meet all of their needs. Both Father and his girlfriend, L.A., had

8

expressed concern, however, about the eating habits of S.T. and A.T. They reported that S.T. and A.T. appeared to know when a visit with Mother was upcoming, and that the younger children's appetites would decrease significantly around that time with S.T. often refusing to eat his food.

Prior to February 15, 2022, Mother had been having consistent visitation with S.T. and A.T. The visits generally went well and Mother acted appropriately, although the children would reject affection from Mother at times. During one visit, however, a conflict arose between Mother and L.A. when Mother wanted to take the children to the restroom on her own. Mother also was upset because Father was nearby throughout the visit. When the social worker later reminded Father that Mother's visits were being monitored by DCFS, he responded that he would not disturb the visits, but he wanted to see what occurred. Father also stated that he believed the visits were negatively affecting the children, and that he was willing to go to jail for not complying with the visitation schedule.

After February 15, 2022, Father refused to allow S.T. and A.T. to visit with Mother. Once the visits stopped, both S.T. and A.T. began to eat well and gain weight. Following a home visit with the family, the social worker determined that it was not in the best interests of S.T. or A.T. to continue visiting with Mother. Ed.T. and El.T. had not had any visits with Mother since their removal from her care because they both refused to see her.

As of March 2022, Mother was not in compliance with her court-ordered case plan. She had not made any effort to enroll in individual counseling. Although she had enrolled in anger management and parenting education classes, her participation in these programs had been minimal. In her discussions with the

9

social worker, Mother blamed an ongoing dispute with her landlord for her noncompliance with her services. She also blamed Father and L.A. for her lack of contact with the children. Mother wanted visitation with the children and to have them back in her care. Father wanted full custody of the children with no visitation for Mother. In its report, DCFS recommended the juvenile court terminate its jurisdiction over the children with an order granting sole legal and physical custody to Father and monitored visitation to Mother at the children's discretion.

In a last minute information for the court filed on April 6, 2022, DCFS reported that it had recently held a team meeting with Mother to address any concerns regarding the case. During the meeting, Mother shared her concern about her lack of visitation with the children. She believed all four children were being coached into not wanting to have any visits with her. When asked if she had apologized to Ed.T. or El.T. for her prior abuse and neglect, Mother explained that she had not been able to speak with the children since their placement with Father. DCFS also reported that Mother remained noncompliant with her case plan. She still had not enrolled in individual counseling, and had made only minimal progress in her anger management and parenting education classes. DCFS further noted that Mother continued to make excuses for her lack of compliance, and that she had not accepted any responsibility for her conduct toward the children. DCFS continued to recommend that the children remain placed in Father's care.

On April 6, 2022, the juvenile court held the six-month review hearing under section 364. DCFS's counsel asked the court to terminate jurisdiction and grant sole legal and physical custody to Father and monitored visitation to Mother. Counsel

10

for Father and counsel for the children also requested that the court grant sole custody to Father, but deny visitation to Mother. Mother's counsel asked the court to continue jurisdiction because Father was not complying with the current visitation orders. Mother's counsel noted that Ed.T. and El.T. had not had any visits at all, and that S.T. and A.T. had not visited with Mother since Father decided on his own that the visits were affecting the children's appetites. In addition, Mother's counsel argued that it was improper for the court to make a visitation order subject to the children's consent.

The juvenile court found that the conditions that justified the initial assumption of jurisdiction no longer existed and were not likely to exist if supervision was withdrawn. The court ordered the termination of jurisdiction over each of the children pending the receipt of a custody order. The custody order granted sole physical and legal custody of the children to Father and monitored visitation to Mother one time per week. The custody order further provided that Mother's visitation was "at the children's discretion," that the visits "are to be monitored by a professional monitor only when the children consent to the visits," and that the "children are not to be forced to visit." In response to an objection from Mother's counsel that a visitation order "can't be contingent on the children's wishes," the court stated that "the children are not going to be forced with her if it's affecting their emotional well-being."

On April 6, 2022, the juvenile court signed the custody order and terminated its jurisdiction. Mother filed a timely appeal.

11

**DISCUSSION**

On appeal, Mother challenges the juvenile court's custody order granting her monitored visitation subject to the children's consent. Mother contends the court abused its discretion by improperly delegating to the children and Father the authority to determine whether visitation would occur, and by terminating jurisdiction without addressing Father's refusal to comply with the prior visitation orders. We conclude the visitation order issued in this case constituted an abuse of discretion, and therefore, remand for the juvenile court to conduct a new hearing regarding visitation.

## I.    Governing Legal Principles

Once a child has been adjudged a dependent of the juvenile court under section 300, "any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court . . . so long as the child remains a dependent of the juvenile court." (§ 302, subd. (c).) Section 364 requires the juvenile court to conduct a review hearing every six months for a dependent child who has been placed in the physical custody of a parent. (*Id.*, subd. (a); *In re T.S.* (2020) 52 Cal.App.5th 503, 512.) At the section 364 review hearing, the juvenile court "shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

When terminating jurisdiction over a dependent child, section 362.4, subdivision (a), authorizes the juvenile court to issue "an order determining the custody of, or visitation with, the

12

child." (*Ibid*.) Section 362.4, subdivision (b), specifies that the order "shall continue until modified or terminated by a subsequent order of the superior court," and directs that the order be filed in a pending family court proceeding (*ibid*.) or, if there is none, as part of a new family court file (*id*., subd. (c)).

In making a custody or visitation order under section 362.4 (commonly referred to as an "exit order"), the court's " 'focus and primary consideration must always be the best interests of the child.' " (*In re T.S.*, *supra*, 52 Cal.App.5th at p. 513.) A juvenile court is not restrained by any preferences or presumptions that are ordinarily applicable in family court. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; accord, *In re C.M.* (2019) 38 Cal.App.5th 101, 110 [" 'presumption of parental fitness that underlies custody law in the family court just does not apply to dependency cases' "].) We review a juvenile court's custody exit order for abuse of discretion. (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re M.R.* (2017) 7 Cal.App.5th 886, 902.) We " 'may not disturb the order unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re M.R.*, at p. 902.)

## II. The Juvenile Court Abused Its Discretion by Improperly Delegating Authority over Visitation

Mother argues that the juvenile court improperly delegated its authority over visitation to the children and Father by giving them sole discretion to decide whether any visits would occur. We agree there was an improper delegation in this case.

California courts consistently have held that the juvenile court may not delegate the decision whether visitation will occur to a third party, including the child, the child's parent, or the social services agency. (See *In re Korbin Z.* (2016) 3 Cal.App.5th

13

511, 519 [improper delegation to child]; *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1505 [same]; *In re S.H.* (2003) 111 Cal.App.4th 310, 319 [same]; *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123 [improper delegation to custodial parent]; *In re Kyle E.* (2010) 185 Cal.App.4th 1130, 1136 [improper delegation to social services agency].)  In ordering visitation, the juvenile court "may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner. [Citation.]  That said, 'the ultimate supervision and control over this discretion must remain with the court. . . .' " (*In re T.H.*, at p. 1123; accord, *In re Kyle E.*, at p. 1135 [court "may delegate the responsibility of managing the details of visitation . . . but not the decision whether visitation will occur"].)

Accordingly, if the juvenile court orders visitation, "it must also ensure that at least some visitation, at a minimum level determined by the court itself, will in fact occur." (*In re S.H.*, *supra*, 111 Cal.App.4th at p. 313.)  " 'When the court abdicates its discretion and permits a third party, including the dependent child, to determine whether any visitation will occur, the court impermissibly delegates its authority over visitation and abuses its discretion.' " (*In re Korbin Z.*, *supra*, 3 Cal.App.5th at p. 519.) This rule of nondelegation applies with equal force to exit orders issued when dependency jurisdiction is terminated. (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.)

In this case, the juvenile court plainly delegated to the children the authority to determine whether any visitation with Mother would occur at all.  The custody exit order issued by the court expressly provided:  "Mother . . . shall have monitored visitation at the children's discretion.  The visits are to be monitored by a professional monitor only when the children

14

consent to the visits." The order further stated that the "children are not to be forced to visit." At the time the juvenile court issued the order, the two oldest children, Ed.T. and El.T., were refusing to consent to any visitation with Mother. While the two youngest children, S.T. and A.T., were preverbal and unable to give their consent, Father was refusing to allow them to visit because he believed contact with Mother was affecting the children's health. Thus, by making Mother's visits subject to the "children's discretion" and "consent," the juvenile court virtually guaranteed that no visitation would occur. (See *In re Hunter S.*, *supra*, 142 Cal.App.4th at p. 1505 [improper delegation where child "was given virtually complete discretion to veto visitation, and indeed all contact, with his mother"]; *In re S.H.*, *supra*, 111 Cal.App.4th at p. 319 [improper delegation where order specified that children shall not be forced to visit because it "transform[ed] the children's ability to refuse 'a visit' into the practical ability to forestall any visits at all"].)

DCFS does not dispute that the juvenile court improperly delegated its authority over visitation. Instead, DCFS argues that the visitation order was not an abuse of discretion because the court made an implied finding that any visitation with Mother would be detrimental to the children. DCFS further asserts that, even if the court erred in failing to make a formal detriment finding, such error was harmless given Mother's lack of compliance with her case plan. DCFS's arguments on this point are unavailing.

Where, as here, "dependency jurisdiction is terminated with the child in the custody of one of his or her parents, section 362.4, subdivision (a), commits to the sound discretion of the juvenile court the authority to make an order determining a

15

noncustodial parent's visitation." (*In re C.S.* (2022) 80 Cal.App.5th 631, 638.) In exercising its discretion under section 362.4, the court must be guided by the totality of the circumstances and issue exit orders that are in the child's best interests. (*In re Chantal S.* (1996) 13 Cal.4th 196, 206; *In re T.S.*, *supra*, 52 Cal.App.5th at p. 513.)

In fashioning any visitation order, the juvenile court also must be mindful that "the parents' interest in the care, custody and companionship of their children is not to be maintained at the child's expense." (*In re S.H.*, *supra*, 111 Cal.App.4th at p. 317.) Furthermore, "the child's input and refusal and the possible adverse consequences if a visit is forced against the child's will are factors to be considered in administering visitation." (*Ibid.*) Nevertheless, "once the court determines that visitation is in the child's best interests, the court must, as part of its duty to protect and serve those interests, ensure that such visitation occurs under terms set by the court." (*In re Korbin Z.*, *supra*, 3 Cal.App.5th at p. 514.) "Otherwise, by placing sole discretion whether visitation will occur in the hands of the child, the court will have ceded to the child the determination whether visitation is in the child's best interests." (*Ibid.*)

Here, once the juvenile court made the decision to order visitation between Mother and the children as part of its exit order, it had the obligation to set the terms of such visitation, and could not give the children or any other third party the sole discretion to determine whether visitation would occur. (*In re Korbin Z.*, *supra*, 3 Cal.App.5th at p. 516 ["[a]lthough the court was not required to order visits for [f]ather, once it did so, it could not delegate the decision whether visitation would occur to [child]"]; *In re T.H.*, *supra*, 190 Cal.App.4th at p. 1124 [once

16

juvenile court determined that father was entitled to supervised visitation, it "abused its discretion by framing its order in a way that gave mother an effective veto power over that right"].) Because the juvenile court improperly delegated its judicial authority by making Mother's visits subject to the children's consent, its visitation order constituted an abuse of discretion.

Mother also asserts that the juvenile court abused its discretion by terminating jurisdiction at a time when Father was not complying with the existing visitation orders. Mother argues that the court instead should have continued jurisdiction and ordered a mental health evaluation for each of the children to determine whether visitation with Mother was detrimental to their well-being. While we agree with Mother that the juvenile court improperly delegated its authority over visitation, we disagree that the court was required to continue jurisdiction solely to assure compliance with its visitation orders.

At a review hearing held pursuant to section 364, the issue before the juvenile court is "whether continued supervision is necessary." (*Id.*, subd. (c).) The court is not concerned with reunification at this stage in the proceedings, but in determining whether dependency jurisdiction should be terminated or continued. (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.) The termination of jurisdiction is required unless the parent, the child, or the social services agency establishes that the conditions justifying the initial assumption of jurisdiction still exist or are likely to exist if supervision is withdrawn. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1155–1156.) Accordingly, once the child has been safely placed in the custody of one of his or her parents, the lack of visitation with the other noncustodial parent is not a proper basis for continuing dependency jurisdiction. (See *In re*

17

*J.M.* (2023) 89 Cal.App.5th 95, 111–112 [juvenile court properly terminated jurisdiction where children were safe in mother's care even though one child was refusing visits with father and their relationship had deteriorated]; *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1500, disapproved on other grounds in *In re Chantal S., supra,* 13 Cal.4th at p. 204 [where child was safely placed with father, visitation issues and conflict between parents did not justify continuing jurisdiction].)

At the section 364 hearing held in this case, the juvenile court found that continued supervision over the children was no longer necessary. There was ample evidence presented at the hearing to support that finding. As reflected in DCFS's reports, the children had been doing well since their removal from Mother and placement with Father. All four children appeared to be happy and comfortable in Father's home, and the two oldest children, Ed.T. and El.T., expressed that they felt safe with Father and wanted to continue residing with him. Because the evidence showed that the children had been safely placed in Father's custody and no protective issues remained, the juvenile court did not err in deciding to terminate jurisdiction.

Rather, as discussed above, the juvenile court's error in this case was in issuing an exit order that gave the children and Father effective veto power over Mother's visitation. Under these circumstances, we reverse the portion of the juvenile court's order regarding Mother's visitation with the children and remand for a new hearing on the issue of visitation. Given that the family's circumstances may have changed since dependency jurisdiction was terminated, the court should consider any relevant evidence proffered by the parties on whether visitation is in the children's best interests. If, on remand, the court decides to order visitation

18

between Mother and any of the children, it must set the terms of such visitation in its order. While the court may delegate to a third party the responsibility for managing the details of visits, including their time, place, and manner, it may not delegate the decision whether visitation will occur.

## DISPOSITION

The portion of the April 6, 2022 order regarding Mother's visitation with the children is reversed, and the matter is remanded for the juvenile court to conduct a new hearing on the issue of visitation. In all other respects, the order is affirmed.


VIRAMONTES, J.


We concur:



STRATTON, P. J.



WILEY, J.


19